W. T. Perry, Appellant, v. The Howe Co-operative
Creamery Company, Appellee.

**Nuisance.**  The deposit of refuse from a creamery in the bed of a
1  stream flowing through plaintiff's land and near his buildings,
polluting the water, and giving off noxious gases affecting the
use and enjoyment of plaintiff's property, is a nuisance.

**Abatement:**  evidence.  A nuisance will not be enjoined after it has
2  been voluntarily abated.   Evidence considered and held to show an
abatement of a nuisance created by discharging the refuse from a
creamery into a stream.

**Damages.**  Where there is no evidence as to the extent of the damage
3  or that serious results followed the creation of a nuisance, an
award of nominal damages only will not be disturbed

**Witnesses:** MILEAGE: ATTENDANCE. The court in its discretion may allow a witness mileage for a distance greater than seventy miles, and for attendance until his testimony is taken.

*Appeal from Adair District Court.*— HON. JAS. D. GAMBLE, Judge.

WEDNESDAY, OCTOBER 26, 1904.

ACTION in equity for an injunction to restrain the continuance of a nuisance, and for damages. Upon hearing, the prayer for injunction was denied, but plaintiff was given judgment for nominal damages, with costs. Both parties appeal. The plaintiff, having first perfected his appeal, will be denominated the appellant.— *Affirmed.*

*Frank B. Wilson,* for appellant.

*Hinkson & Brown,* for appellee.

BISHOP, J.— The trial court found that a nuisance existed as alleged at the time the action was commenced, but refused an injunction on the ground that before the trial such nuisance had been abated. The several contentions of the parties lead us to inquire whether the findings of facts as to the existence and the abatement of the nuisance were warranted, and, if warranted, whether as matter of law the prayer for an injunction should have been granted nevertheless.

In 1898, plaintiff, with others, organized and procured to be incorporated the defendant company. As its name implies, the business of the corporation is the manufacture of butter, and this it does from milk supplied by its stockholders, farmers residing in the vicinity. The creamery buildings were located on the bank of a small waterway, a branch of the Middle river. In wet seasons a small stream of water runs through the way, while in dry seasons the water stands in pools, or dries up en-

1. NUISANCE.

tirely.   Plaintiff's farm is below the location of the cream-
ery, his farm buildings being situated about forty rods from
the creamery building.   The waterway passes along to the
rear of his barns and outhouses.   As at first constructed, the
refuse of the creamery, consisting of the washing of the
churns, vats, cans, etc., was dumped immediately into the
waterway.   Without stating the facts in detail, we may say
that, in our opinion, there is sufficient evidence upon which
to predicate a finding that in the summer time, especially
during low stages of water, such refuse became decomposed
in the bed of the stream, and polluted the water, and, as well
gave off noxious and offensive gases and smells, affecting the
use and enjoyment of plaintiff's property.   This was suffi-
cient to make out a case of nuisance.   Wood on Nuisances,
sections 332-561.

Having reached this conclusion, we may next inquire
whether such nuisance had been abated before the trial in
the court below, and if so, the effect thereof.   As to the
fact in question, we are content to hold with the
2. ABATEMENT: trial court that an abatement had taken place.
   evidence.
A large cesspool had been constructed into which were
drained all the washings, etc., from the creamery, and the
only outlet therefrom was through a filtered drain.   Wit-
nesses, whose appearance and manner of testifying com-
mended them to the trial court, testify that thereafter the
offensive character of the discharge into the waterway was
practically done away with.   True, some of the witnesses
insist that a creamery odor was still discoverable to one
standing in the path of the wind, and there is testimony to
the effect that to some extent the pollution of the water still
continued.   We conclude, however, that this was not suffi-
cient to justify the injunction prayed for.   It is not every
pollution of a stream, nor every case of noisome or noxious
smells, that will constitute a nuisance.   The demands of the
present day require the establishment and operation of
creameries as well as other factories, and it is not to be ex-

pected that in the presence of such places there will be found the pure air incident to secluded and unfrequented stretches of country. So it has come to be the rule that " the fact that a trade, whether a noisy trade or one that liberates smoke, noxious vapors, or noisome smells, or any use of property, however improper, on the part of the person devoting his property to such use, impairs the value of an adjoining property, does not thereby create a nuisance, unless the ill resulting from the trade produces actual, physical discomfort, or a tangible, visible injury to the property itself." Wood on Nuisance, section 640. See, also, *Pennoyer v. Allen,* 56 Wis. 502 (14 N. W. Rep. 609, 43 Am. Rep. 728); *Tiede v. Schneidt,* 105 Wis. 470 (81 N. W. Rep. 826); *Bennett v. Mfg. Co.,* 103 Iowa, 207.

Was the trial court in error in refusing an injunction, the nuisance having been abated? We think this question must be answered in the negative. Equity will interfere through the medium of an injunction to restrain a private nuisance in two classes of cases only: First, when it is made to appear that the act threatened, if done, would be destructive, or that the injury would be irreparable; second, that repeated or continuous acts of wrong are done or threatened. It is the rule in all such cases that, when the legal remedy of an action at law for damages is adequate, a complaining party must be remitted to such remedy. In the first of the class of cases in which equity will interfere it is upon the theory solely that the injury, if accomplished, will be such that the personal or property rights threatened cannot be restored to an original condition, or cannot be compensated by money damages. In the second class of cases equity interferes, that a multiplicity of actions for damages may be avoided. Now, where the situation as shown to exist at the time of trial is such as that all the damage that may be expected has been done, and the conditions are such that no repetition of the acts or conduct complained of is to be apprehended, there can be no occasion for the entry of an in-

junctional decree. There is no longer anything to enjoin, and courts do not indulge in the idle task of formulating and entering decrees that cannot be made effective, because there is no state of facts to which the same can have application. Pomeroy's Equity, section 1357.

We are aware that in cases of intoxicating liquor nuisances — being public in character, and not the subject of an action for damages — it has been held that the public is not obliged to rest its interest on the mere assertion of the defendant that he will not repeat the act of infringement. Thus, where it appears that the defendant has been maintaining a nuisance, the fact that he testifies that shortly before the trial that he has quit the business will not be sufficient ground for refusing the injunction. *Judge v. Kribs,* 71 Iowa, 183; *Halfman v. Spreen,* 75 Iowa, 309. But this rule can have no application in principle to the case of a private nuisance, resulting in private damages alone, and which, as disclosed by the record, has been permanently abated. Moreover, it has been held, even in the case of a liquor nuisance, where the owner of the building has been informed that such has been maintained by his tenant, and takes steps to have it abated, an injunction should not issue, it being made to appear that the owner is acting in good faith. *Shear v. Brinkman,* 72 Iowa, 698.

II. Appellant contends that the trial court erred in awarding him nominal damages only. With this contention we are not prepared to agree. No evidence, competent to the purpose, whatever, was introduced showing 3. DAMAGES. any special damage to any property right. We find nothing in the record upon which an award of damages could be predicated, save that it is made to appear that members of plaintiff's family were at times nauseated by the smells coming from the creamery. Conceding that plaintiff could recover damages therefor, there is nothing to indicate the extent to which this occurred, or that such was followed

by any serious results, either as to health or the matter of employment. Accordingly, we see no reason for disturbing the judgment.

III. Appellee complains because of the taxation of fees in favor of a witness for plaintiff, and particularly because such witness, by name E. M. Brown, 4. WITNESSES: was credited with mileage from the State line, mileage; attendance. a distance greater than seventy miles, and for a greater number of days than was actually consumed in the trial of the case. The witness was a material one, and it does not appear that he was subpœnaed for the purpose of unnecessarily increasing the costs. Under the ruling in *Casley v. Mitchell,* 121 Iowa, 96, a witness may be entitled to have taxed the actual mileage necessarily traveled by him. As to his attendance, it seems that he appeared in answer to the subpœna while court was in session, and remained no longer than to give his testimony in the case when called. The witness claimed mileage from a point without the State, and the trial court, on motion, reduced the amount to mileage within the State. The matter was largely in the discretion of the court, and we think there was no error. The case of *Climie v. Appanoose County,* 125 Iowa, 292, is in point.— *Affirmed.*