## WM. McGILL v. THE PINTSCH COMPRESSING COMPANY, a CORPORATION, Appellant.

**Nuisance:** SMOKE AND NOISOME FUMES.  Generally speaking, every person is entitled to the exclusive and uninterrupted enjoyment of his property and to damages when such enjoyment is interrupted or diminished; but every chimney or smoke stack emitting smoke or noisome fumes is not a nuisance *per se*, it is only where emitted in an unreasonable amount or in an unreasonable manner resulting in tangible injury that the court will interfere.

**Same.**  The degree of freedom from smoke to which one is entitled depends upon the locality and prevailing use to which the property is put, so that what might constitute a nuisance in one locality might be thought reasonably to be expected in another.

**Same:** EVIDENCE.  Evidence held to show that smoke, fumes and noises emitted from a manufacturing plant constituted a nuisance.

**Same:** MEASURE OF DAMAGES: EVIDENCE.  A factory for the manufacturing of compressed gas is not a nuisance *per se,* and if so operated that it affects the comfortable enjoyment of surrounding property the measure of damages is confined to a diminution in the rental value, and cannot be based upon an injury to the property itself or mere proximity of the plant.  Evidence held insufficient to sustain a payment for substantial damages.

*Appeal from Pottawattamie District Court.*—Hon. N. W. Macy, Judge.

TUESDAY, DECEMBER 15, 1908.

ACTION to enjoin defendant from continuing its business of manufacturing compressed gas, and for damages. A decree was entered restraining it from operating its plant without equipping it with a smoke consumer and its boiler with a muffler, and damages were allowed. The defendant appeals.—*Modified* and *affirmed.*

*Wright & Baldwin,* for appellant.

*Wm. A. Mynster* and *E. E. Aylesworth,* for appellee.

LADD, C. J.—The defendant is and has been for the ten years last past engaged in the production of compressed gas which it supplies to all the railroad companies whose lines enter Council Bluffs or Omaha. Immediately south and· west of the plant are the extensive railroad yards essential to the business of a railroad center, and in other directions dwelling houses. The dwelling of plaintiff, occupied by a tenant, is within one hundred and thirty-five feet to the northwest of it, with nothing intervening save a small coal shed. The plant consists of four furnaces, constructed of fire brick, with five or six smoke stacks, twenty-four retorts, each twenty-two inches wide by fourteen inches high, and ten feet long, constructed of iron and steel. The oil is unloaded into tanks, from which it is drawn into these retorts or crucibles where the gas is produced, and this gas is then passed through a purifier into other tanks, from which it is delivered to purchasers. About four tons of soft coal are burned in twenty-four hours, the plant being operated continuously. It represents

an investment of about $100,000, and the annual output approximates that sum in value. The complaint of the plaintiff is that as the prevailing winds are from the southeast in that locality, as the evidence tended to show, these carried such volumes of smoke and soot, together with offensive fumes, emitted from the plant over plaintiff's house as to interfere with its comfortable enjoyment and use, and that the noises from the exhaust on its boiler had the same effect. The sufficiency of the evidence to establish a nuisance is challenged, but, as defendant cheerfully complied with the requirement of the district court that its exhaust pipe be equipped with a muffler and the furnace with a smoke consumer or other device to lessen the escape of smoke, soot and odors, we need only consider this question in so far as it bears on defendant's liability for damages.

A nuisance is defined by statute to be "whatever is injurious to health, indecent or offensive to the senses, or is an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property," and damages because thereof may be recovered. Section 4302, Code. Every person has the right to have the air diffused over his premises in its natural state, freed from artificial impurities, and therefore the use of one's property so as to unwarrantably impregnate the atmosphere with foreign substances, such as smoke, soot, noisome fumes and odors which would not exist therein but for his instrumentality, is regarded as a nuisance and is actionable as such. By atmosphere freed from artificial impurities is not meant air absolutely pure, but an atmosphere as free and pure as reasonably could be expected in view of the particular location and the business conducted there. As every chimney or smokestack emits smoke, doing so does not constitute a nuisance *per se*. *City of St. Paul v. Gilfillan,* 36 Minn. 298 (31 N. W. 49); *St. Louis v. Heitze-*

1. NUISANCE: smoke and noisome fumes.

*berg, etc., Co.,* 141 Mo. 375 (42 S. W. 954, 39 L. R. A. 551, 64 Am. St. Rep. 516). The air is more heavily laden with it in the thickly settled portions of a city or town than elsewhere, in the business portion more than the residence. Such contaminations are indispensable to the reasonable enjoyment of property, and with these the law does not interfere. Only when an unreasonable amount of smoke is emitted or is emitted in such an unreasonable manner as to inflict injury on another will the courts interfere. There is no precise test by which to determine when the smoke impurity imparted to the atmosphere is of a greater degree than is permissible. The injury must be tangible. Mere annoyance is not enough. It must be such as to render the occupancy of the complainant's premises physically uncomfortable to a person of ordinary sensibilities for the purpose to which devoted. Every person is entitled, generally speaking, to the exclusive and uninterrupted enjoyment of his premises, and to redress if such enjoyment shall be interrupted or diminished. Wood on Nuisance, section 495 *et seq.*

An offensive trade or manufacture may require interference in equity as well as any other nuisance, for though necessary and lawful they should be exercised in remote places. Says Judge Cooley concerning the subject generally in *Gilbert v. Showerman,* 23 Mich. 448:

The right, nevertheless, to have such a business restrained is not absolute and unlimited, but is, and must be in the nature of things, subject to reasonable limitations which have regard to the rights of others not less than to the general public welfare. One man's comfort and enjoyment with reference to his ownership of a parcel of land can not be considered by itself distinct from the desires and interests of his neighbors, as otherwise the wishes of one might control a whole community, and the person most ready to complain might regulate to suit himself the business that should be carried on in his neighborhood. In a crowded city, some annoyance to others is inseparable

from almost any employment, and while the proximity of the stables of a dealer in horses, or of the shops of workers of iron or tin, seems an intolerable nuisance to one, another is annoyed and incommoded, though in less degree, by the bundles and boxes of the dealer in dry goods, and the noise and jar of the wagons which deliver and remove them. Indeed, every kind of business is generally regarded as undesirable in the parts of a city occupied most exclusively by dwellings, and the establishment of the most cleanly and quiet warehouse might, in some neighborhoods, give serious offense and cause great annoyance to the inhabitants. This can not be otherwise so long as the tastes, desires, judgments and interests of men differ as they do; and no rule of law can be just which, in endeavoring to protect the interests and subserve the wishes of a complaining party, fails to have equal regard to the interests and wishes of others. The true principle has been said by an eminent jurist to be one 'growing out of the nature of well-ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the· implied liability that his use of it shall not be injurious to the equal enjoyment of others having an equal right to the˙enjoyment of their property, norˉ injurious to the rights of the community. All property is held subject to those general regulations which are necessary to the common good and general welfare. Rights of property, like all other social and conventional rights, are subject to such reasonable restraints and regulations established by law as the Legislature, under the governing and controlling power vested in them by the Constitution, may think necessary and expedient.' Shaw, C. J., in *Commonwealth v. Alger*, 7 Cush. (Mass.) 84.

So that the degree of freedom from smoke in the atmosphere to which one is entitled is relative, and depends on the locality and prevailing use to which property there is put. What might constitute a nuisance in one locality would be what·reasonably might be anticipated in another. As remarked at the outset, the smoke must be emitted in unreasonable amounts or emitted in an unreasonable manner in view

2. SAME.

of the locality and surroundings to constitute a nuisance. These principles are of such universal acceptation that it seems unnecessary to cite authorities in their support, but see: *Harley v. Merrill Brick Co.,* 83 Iowa, 73; *Shirley v. Railway,* 74 Iowa, 169; *Shiras v. Olinger,* 50 Iowa, 571; collection of cases in 29 Cyc. 1187 *et seq.* Precisely the same rule obtains with reference to noises. That they may be disagreeable or annoying is not enough to warrant an interference by the courts. They must be of such a character as to be of actual physical discomfort to persons of ordinary sensibilities. See *Redd v. Edna Cotton Mills,* 136 N. C. 342 (48 S. E. 761, 67 L. R. A. 983); *Hill v. McBurney Oil & Fertilizer Co.,* 112 Ga. 788 (38 S. E. 42, 52 L. R. A. 398); and authorities collected in 29 Cyc. 1185.

Whether smoke or noise constitute a nuisance, then, depends on the evidence in each particular case. Reverting to that in the case at bar, it must be said that owing **3. Same:** to the proximity to the railroad yards the **evidence.** locality was noisy. The witnesses, however, especially complained of the peculiar noise from defendant's exhaust pipes, described by one as a popping noise, another as unbearable and happening day and night, and still another as "kind of popping noise which shakes the house and the glass." Others living in different directions from the plant do not appear to have been disturbed thereby. Some evidence was to the effect that the prevailing wind in the locality was from the southeast, and doubtless this and the relative distances from the plant account for the variance in the evidence. The showing that soot and smoke in unusual quantities and the odors were carried toward and enveloped plaintiff's house was all but conclusive. The tenants were shown to have been compelled to keep the doors and windows closed in warm weather to exclude the soot and fumes, and everything exposed was blackened. Without reviewing the evidence in detail, it

is enough to say that the interference with the comfortable enjoyment of plaintiff's house was unreasonable and such as constitutes a nuisance.

II.   Even though there was a nuisance, it does not follow that damages were proven.   The dwelling was occupied by a tenant, and depreciation in the value of the premises because of the injury, as it was not permanent but subject to abatement, was not the measure of damages.   *Loughran v. City of Des Moines,* 72 Iowa, 389; *Shirely v. Ry.,* 74 Iowa, 169; *Randolf v. Bloomfield,* 77 Iowa, 52; *Ferguson v. Firmenwich · Mfg. Co.,* 77 Iowa, 581.   In such a case, in the absence of injury to the property itself, the measure of damages is the diminution in the rental value caused by the maintenance of the nuisance.   This depreciation must result from interference with the comfortable enjoyment of the premises, and not from the mere prejudice against the property in consequence of its proximity to the plant, for the latter depreciation can not be said to have been caused by the injury.   4 Sutherland on Damages, section 1048; *Rust v. Victoria Graving Dock Co.,* 36 Ch. Div. 113, 131; *Robb v. Carnegie Bros. & Co.,* 145 Pa. 324 (22 Atl. 649, 14 L. R. A. 329, 27 Am. St. Rep. 694); *City of San Antonio v. Estate of Mackey,* 22 Tex. Civ. App. 145 (54 S. W. 33).   The erection of undesirable buildings in the immediate neighborhood, as a livery barn or distillery, or the occupation of existing buildings for undesirable purposes in the immediate vicinity of the dwelling—for instance, a saloon or poolroom—might diminish the comfort of its use and even impair its rental value, but the owner would be without redress for any injury due to the proximity alone.   If, however, the business is so conducted as to affect the use of the dwelling or the health of its occupants, these tangible injuries, capable of measurement by a pecuniary standard, may support an action for damages or other relief.   Now the de-

4. SAME: measure of damages: evidence.

fendant had the right to construct its plant where it did, and to manufacture compressed gas at that place. If doing so affected the rental value of his house, the owner could no more complain than of the location of a saloon or livery stable in close proximity. The nature of the business must be left out of view, for this gas plant was not shown to be a nuisance *per se,* and it ought not to be so assumed in the absence of proof. The sole inquiry is whether harm has been done to plaintiff by or as the direct result of the prosecution of defendant's business in the manner charged at the place it had the right to locate and conduct it. Looking to the evidence, there will be found none to sustain the award of damages. Plaintiff disclaimed any knowledge of the rental value of his property, but testified that he had fixed the rental at $12.50 per month, that it had been vacant at different intervals—in all, nine months—and that the last tenant was paying $10 per month. In explanation of this he related that "people said it was too near the gas-house." Smith and Larson estimated the rental value of the premises at $200 per year "if no gas plant were there." But this, as we have seen, was not the criterion by which to compute damages, for the company had the right to construct its plant at that locality. No evidence was adduced tending to show the diminution of the rental value because of the conduct of defendant's business in such a manner that smoke, soot, fumes and noises emanated from the plant and interfered with the comfortable enjoyment of plaintiff's premises, and for this reason no more than nominal damages should have been allowed. The decree will be so modified as to eliminate the judgment for damages.

*Modified* and *affirmed.*