MEL FOSTER CO. PROPERTIES, INC., Appellee,

v.

The AMERICAN OIL COMPANY (AMOCO), a Maryland Corporation, and U–Haul Co. of Eastern Iowa, an Iowa Corporation, Appellants,

and

Chateau Standard, Inc., an Iowa Corporation, Defendant.

No. 86–1777.

Supreme Court of Iowa.

July 20, 1988.

---

Rand S. Wonio of Lane & Waterman, Davenport, for appellee.

Richard C. Garberson, Steven J. Pace, and Constance Alt of Shuttleworth & Ingersoll, Cedar Rapids, for appellant Amoco.

Thomas M. Zurek and Ann M. VerHeul of Mumford, Schrage & Zurek, Des Moines, for appellant U–Haul.

ANDREASEN, Justice.

This appeal concerns approximately four acres of land owned by Mel Foster Company Properties, Inc. (Foster). The real estate is part of a commercial development park located in the City of Bettendorf and convenient to the Interstate 74 road system. Certain improvements have been made to the Foster land, such as installation of water and utilities, but the lots are as yet undeveloped. Property adjacent to these lots has been developed.

Foster's property is bordered by property owned by U–Haul Company of Eastern Iowa (U–Haul) and Amoco Oil Company (Amoco). Amoco's property is leased to Chateau Standard (Chateau). Foster's property has a very good potential for development. It is Foster's intention to hold the property vacant until a particularly good business arrangement develops, then to enter into a long-term lease agreement.

In October of 1982, gasoline was found in the basement sump of an adjacent home. The Iowa Department of Environmental Quality[1] began a field investigation. A series of twenty-three monitoring wells were placed on Foster's property to deter-

---

1. The Iowa Department of Environmental Quality is now known as the Iowa Department of Natural Resources.

mine the source and extent of the gasoline saturation.

The investigation resulted in the discovery that an underground gasoline tank of U–Haul and a distribution line at the Chateau gas station were leaking. Both the leaking tank and distribution line were replaced. Amoco designed and installed a recovery system on Foster's property. This system consisted of ditches filled with gravel and a series of pumps to remove accumulated gasoline. The recovery system has not removed all of the gasoline.

Foster's petition initially asserted several causes of action, including negligence, strict liability, trespass, and nuisance. Foster's petition was later amended to claim only nuisance damages and the case was tried to a jury.

At trial, the court instructed the jury that the measure of damages was the reduction of reasonable rental value of the property caused by the nuisance measured from discovery of the gas leak to the time of trial. The jury found that a nuisance was caused by seepage of gasoline onto Foster's property and awarded damages of $188,000. The jury found that U–Haul had caused sixty percent of the damage and that Amoco had caused forty percent of the damage. Because the trial court held that this was a temporary nuisance, Foster has the ability to bring subsequent suits to recover damages based on future lost rental value of the property.[2]

Both Amoco and U–Haul challenge the district court's interpretation of nuisance law. Challenges are raised to the district court's definition of this contamination as a temporary nuisance, and the use of the diminuation of rental value as the measure of damages. Amoco asserts that no nuisance existed as a matter of law, and that it was error for the court to refuse to admit evidence concerning Foster's failure to mitigate damages. U–Haul claims that the district court erred in admitting an exhibit offered by Amoco which was a model of the underground water table configuration in this area. In addition, both defendants

challenge the prejudgment interest awarded to Foster.

In the arguments, the parties discuss the definition of a nuisance, the determination of whether the nuisance has been abated, and the characterization of this nuisance as temporary or permanent. The focus of this dispute, however, is the correct measure of damages. Foster asserts that the district court correctly instructed the jury that the measure of damages was the loss of reasonable rental value; Amoco and U–Haul urge that Foster is limited to a one-time damage award based upon the diminuation of the market value of the property. To resolve this conflict, it will be necessary to review certain basic principles of nuisance law.

I. The statutory definition of a nuisance is found at Iowa Code section 657.1 (1987). That section provides:

> Whatever is injurious to health, indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable use and enjoyment of life or property, is a nuisance, and a civil action by ordinary proceedings may be brought to enjoin and abate the same and to recover damages sustained on account thereof.

The common law defines a nuisance as an actionable interference with a person's interest in the private use and enjoyment of their land. *See Patz v. Farmegg Products, Inc.*, 196 N.W.2d 557, 560 (Iowa 1972); *Riter v. Keokuk Electro–Metals Co.*, 248 Iowa 710, 721, 82 N.W.2d 151, 157 (1957). Nuisance law is based on the principle that "[o]ne must use his own property so that his neighbor's comfortable and reasonable use and enjoyment of his estate will not be unreasonably interfered with or disturbed." *Patz*, 196 N.W.2d at 560 (quoting *Bates v. Quality Ready Mix Co.*, 261 Iowa 696, 702, 154 N.W.2d 852, 857 (1967)). The statutory definition of a nuisance does not modify the common-law rules regarding a nuisance. *Schlotfelt v. Vinton Farmers' Supply Co.*, 252 Iowa 1102, 1107, 109 N.W.2d 695, 698 (1961).

---

**2.** Foster filed a second action for damages five days after the jury's verdict.

■ Amoco asserts that no nuisance existed as a matter of law because the injury to Foster's property was not shown to have been caused by intentional, negligent, or reckless conduct. We disagree. It is well established that the existence of a nuisance is not "affected by the intention of its creator not to injure anyone." *Patz*, 196 N.W.2d at 561; *see also Ryan v. City of Emmetsburg*, 232 Iowa 600, 605, 4 N.W.2d 435, 439 (1942).

■ The defendants claim that the nuisance was abated at the time that U–Haul and Amoco corrected the sources of the pollution. To find that the nuisance is abated when the source of the nuisance is corrected, even though the contaminated property remains unusable, is to incorrectly focus on the cause of the nuisance rather than the injury to the property. *See Idaho Gold Dredging Corp. v. Boise Payette Lumber Co.*, 52 Idaho 766, 773, 22 P.2d 147, 149 (1933). In *Perry v. Home Co-operative Creamery Co.*, 125 Iowa 415, 417–18, 101 N.W. 150, 151 (1904), waste from a creamery which was dumped into a stream was found to be a nuisance. The creamery took steps to correct the nuisance, but an odor remained. In holding that the odor remaining after the corrective actions were taken did not constitute a nuisance, the court focused on the level of interference with the plaintiff's use and enjoyment of the property, not on the corrective actions taken by the creamery. *Id.*, 101 N.W. at 151. *Perry* demonstrates the rule that a nuisance is not abated until the use and enjoyment of the property is no longer interfered with. Therefore, the nuisance in this case will not abate until the use and enjoyment of Foster's land is no longer interfered with.

■ The parties also dispute whether this nuisance is a temporary or permanent nuisance. This classification, according to the parties, will dictate the appropriate measure of damages; a temporary nuisance will result in damages equal to loss of rental value and a permanent nuisance will result in damages equal to loss of reduction in market value. We disagree.

Underground gasoline contamination does not fit neatly into a category as either a temporary or permanent nuisance. Case law concerning temporary nuisances often deals with the type of interference with the use of property which is abated when the cause of the nuisance has abated. *See, e.g., Bates v. Quality Ready–Mix Co.*, 261 Iowa 696, 702–03, 154 N.W.2d 852, 856–57 (1967) (noise and dust, no assertion of long-term damage to property itself); *Kellerhals v. Kallenberger*, 251 Iowa 974, 981, 103 N.W.2d 691, 695 (1960) (same); *Duncanson v. City of Fort Dodge*, 233 Iowa 1325, 1329, 11 N.W.2d 583, 585 (1943) (odors from sewage, no damage to property itself); *Wesley v. City of Waterloo*, 232 Iowa 1299, 1304, 8 N.W.2d 430, 432 (1943) (same). These cases, which address an interference with the use of property but do not encompass injury to the property itself, are not instructive in dealing with chemical pollution to real estate which will remain in the soil for an indefinite period of time. In *McGill v. Pintsch Compressing Co.*, 140 Iowa 429, 435, 118 N.W. 786, 789 (1908), this court stated:

> In such a case [temporary nuisance], *in the absence of injury to the property itself*, the measure of damages is the diminution in the rental value caused by the maintenance of the nuisance.

*Id.* (emphasis added).

Other cases suggest that if a nuisance causes damage which will be presented for an indefinite period of time, that nuisance should be considered permanent. *See Ryan v. City of Emmetsburg*, 232 Iowa 600, 608, 4 N.W.2d 435, 441 (1942) ("it may be said that a permanent nuisance is one of such character and existing under such circumstances that it will be reasonably certain to continue indefinitely into the future"); *see also Hudson v. Peavy Oil Co.*, 279 Or. 3, 10, 566 P.2d 175, 179 (1977) (permanent in the sense that injury was likely to persist for an undetermined but significant period of time); *Mikol v. Vlahopoulos*, 86 Ariz. 93, 94, 340 P.2d 1000, 1001 (1959) (nuisance considered permanent if it "will remain even though the cause has been abated"). The case of *Danciger Oil & Refining Company v. Donahey*, 205

Okla. 390, 238 P.2d 308 (1951), correctly states the context in which the word "permanent" must be understood:

> The word "permanent" in a legal sense is not equivalent to perpetual, or unending, or unchangeable. Permanency, in a legal acception of the term, does not mean forever—indefinitely long is sufficient.

*Id.* at 394, 238 P.2d at 312; *see also Sinclair Refining Co. v. Bennett,* 123 F.2d 884, 886–87 (6th Cir.1941); Note, *Stream Pollution—Recovery of Damages,* 50 Iowa L.Rev. 141, 152 (1964).

Chemical contamination of land, such as the gasoline on Foster's property, encompasses aspects of both a temporary and permanent nuisance. This injury is temporary in the sense that the cause of the pollution has been discovered and abated, and the harmful chemicals in the ground will eventually dissipate. This nuisance is permanent in the sense that it constitutes damage to the ground itself and will continue for an indefinite but significant period of time. An attempt to classify chemical pollution as a permanent or temporary nuisance is further complicated by the presence of rapidly changing scientific technology. Scientific knowledge enables society to successfully clean up pollution once thought to be permanent; it also reveals hidden dangers in chemicals once thought to be safe. We agree with one commentator's statement:

> The terms "permanent" and "temporary" are somewhat nebulous in that they have practical meaning only in relation to particular fact situations and can change in characterization from one set of facts to another.

Note, *Stream Pollution—Recovery of Damages,* 50 Iowa L.Rev. 141, 153 (1964).

When a nuisance results in contamination of property for an indefinite period of time, the proper measure of damages is the diminution of the market value of the property. This measure of damages is proper even when the source of the contamination or pollution has been abated. Permanent damages may be awarded even if the nuisance is classified as temporary. *See Stockdale v. Agrico Chemical Co. Division of Continental Oil Co.,* 340 F.Supp. 244, 270 (N.D.Iowa 1972) ("It is said that there is no direct relationship between the classification of the nuisance and the classification of the injury.... It is possible for a temporary nuisance to result in permanent or temporary damages or both.") (citations omitted); *see also* Note, 50 Iowa L.Rev. at 153. Cases from other jurisdictions support the award of permanent damages in this case. *See, e.g., Sinclair Refining Co. v. Bennett,* 123 F.2d 884, 886–87 (6th Cir.1941) (gasoline contamination of wells resulted in permanent damages even though contamination would dissipate over time); *Idaho Gold Dredging Corp. v. Boise Payette Lumber Co.,* 52 Idaho 766, 22 P.2d 147 (1933) (grease and oil contamination of minefields results in permanent damages); *Sunray DX Oil v. Brown,* 477 P.2d 67, 69 (Okla.1970) (permanent damage to realty can result from a temporary and abateable nuisance); *Danciger Oil & Refining Co. v. Donahey,* 205 Okla. 390, 393–94, 238 P.2d 308, 312 (1951) (permanent damages awarded for chemical contamination which will dissipate after several years); *Lytle v. Payette–Oregon Slope Irrigation Dist.,* 175 Or. 276, 288, 152 P.2d 934, 939 (1944) (infestation of property with noxious weeds justified award of permanent damages); *Gross v. Connecticut Mut. Life Ins. Co.,* 361 N.W.2d 259, 272–73 (S.D.1985) (injury which reduces the productivity of land justifies award of diminution of market value of the land); *St. Louis Southwestern Ry. Co. v. Denton,* 288 S.W. 476, 477 (Tex.Civ. App.1926); *Akers v. Ashland Oil & Refining Co.,* 139 W.Va. 682, 691, 80 S.E.2d 884, 888–89 (1954) (even though oil contamination would eventually leave the ground, award of permanent damages is appropriate).

The award of permanent damages based on the reduction of market value provides that the plaintiff's remedies stemming from this particular incident will be addressed in one legal action. Successive actions to recover temporary damages stemming from one incident, such as the action currently filed by Foster, are contrary to the goal of efficient legal remedies. In the early case of *Finley v. Hershey,* 41 Iowa

389, 395 (1875), this court upheld an award of permanent damages for a nuisance consisting of a stagnant pond caused by the dumping of waste from a slaughter house. In making that decision, we stated:

> If plaintiffs could only recover for the depreciated value of the use of the property whenever the property was used ... there would be a continually recurring cause of action in favor of plaintiffs, and the rights of the parties would not be settled in the present suit, a thing the law will avoid.

*Id.*

We conclude the proper measure of damages in this nuisance case is the difference between the market value of Foster's property immediately before contamination and the market value of that property after the contamination. The district court erred by establishing the measure of damages as the reduction in the rental value of the property instead of the reduction in the market value of the property caused by the gasoline contamination.

■ II. The trial court did not err in excluding evidence concerning the conduct of the parties in reaching an agreement to install the recovery system. This evidence is irrelevant and would only serve to confuse the issues. The trial court did not abuse its discretion in admitting the model of the ground water level. *See Schuller v. Hy–Vee Food Stores, Inc.,* 328 N.W.2d 328, 331 (Iowa 1982) (abuse of discretion standard applies to district court rulings on demonstrative evidence). This case is remanded to the district court for retrial of the damage issue consistent with this opinion. Interest on any award of damages will be computed in accordance with Iowa Code section 535.3 (1987).

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

All Justices concur except CARTER, SCHULTZ and NEUMAN, JJ., who take no part.