## No. 36,180

THE STATE OF KANSAS, ex rel. George Francis Burton, County Attorney of Labette County, *Appellant*, v. N. E. VANDYNE and HOWARD VANDYNE, doing business as THE PARSONS ICE COMPANY and THE PARSONS COLD STORAGE COMPANY, *Appellees* and *Cross-appellants.*

(155 P. 2d 458)

Opinion filed January 27, 1945.

*C. E. Pile,* of Parsons, and *George Francis Burton,* county attorney, argued the cause for the appellant.

*Chester Stevens,* of Independence, and *Elmer W. Columbia,* of Parsons, argued the cause for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action by the state on the relation of the county attorney to enjoin the defendants from operating an ice man-

ufacturing plant. The petition was in three causes of action. Judgment was for the defendants on two of the causes and for the plaintiff on one of them. Both parties have appealed.

The first cause of action alleged that the defendants were engaged in the manufacture and sale of artificial ice on lot 12 in block 14 in Stevens & Barrows West Side Addition to the city of Parsons, and that this lot was within the residential area of the city; that Parsons had enacted a zoning ordinance at a time when a filling station was being operated on the lot in question and subsequent to the enactment of the ordinance a frame building was built thereon and the manufacturing of ice was begun therein; that the ordinance, No. 3179, placed the lot in question in the commercial district and ordinance No. 3327, enacted October 24, 1939, placed it in the residential district; that on August 18, 1930, this lot was included in the commercial district and was used only for the sale of manufactured ice and for an oil and gas filling station and that subsequently the ice manufacturing business was installed thereon; that defendants had no certificate of occupancy for the lot in question; that the business of manufacturing ice was on the lot in violation of the provisions of the zoning ordinance. The petition further alleged that a large number of citizens had protested to the mayor and commissioners of the city against the construction of an addition to the ice plant building and the building inspector had reported that the building was not unlawful, whereupon an appeal had been taken to the mayor and commissioners and no action had been taken thereon and petitioner had no adequate remedy at law.

The prayer was for an order restraining the defendants from doing any of the unlawful acts charged in the petition; from unlawfully conducting the business of manufacturing ice on the premises; and that the ice manufacturing business be declared a public nuisance and abated, and for costs.

The second cause of action referred to all the allegations of the first, and alleged further that in the operation of the ice plant defendants used a large aerator by which water was caused to fall and to make a steady, constant, penetrating and monotonous noise, to the discomfort of citizens living nearby; that defendants operated the plant twenty-four hours a day and had installed a powerful flood light which caused a constant and unwavering light; that many persons operated trucks and automobiles there at all hours of the night and constantly honked at each other, making loud noises which were

heard for long distances; that people called to each other in loud voices, hammered and shouted and in the operation of the plant made noises in dragging cakes of ice about so that the sleep of the residents in the area was constantly disturbed and the sick and weak were distressed thereby and it was necessary for them to sleep in their basements in order to obtain rest and that the method and manner of operating the plant was a common nuisance.

As to this cause of action, the plaintiff prayed that the operation of the ice manufacturing business be declared unlawful and a common nuisance and that it be abated.

In the third cause of action the plaintiff made the allegations of its first cause of action a part and alleged the proximity of certain public buildings of Parsons to the lot in question and that all of the area was densely populated and further alleged that the defendants had appropriated to their exclusive commercial use for traffic purposes all that part of Twenty-ninth street within the west curb thereof located between the alley north of its building and Main street one half block in length; that for its traffic purposes defendants used the sidewalk and parking area; that the flood light standard hereinbefore mentioned stood in this parking area; that no sidewalk for the use of citizens existed along the east side of lot 12; that the citizens of Parsons were prevented from the public use of Twenty-ninth street between Main street and Washington avenue by reason of congested traffic unlawfully thereon because of the operation of this plant; that the use and occupancy of lot 12 by defendants and their appropriation of the public thoroughfares adjoining for the conduct of their private business constituted a nuisance against the public rights of the citizens of Parsons.

As to this cause of action the prayer was about the same as for the other two causes.

Various ordinances were attached to this petition as exhibits.

The answer of the defendants was a general denial together with a specific allegation that the plaintiff had no capacity to sue; was not the real party in interest; that several causes of action were improperly joined; that there was a confusion of theories in the petition; that the facts stated did not disclose a public or common nuisance; that the defendants and their tenants had been operating a gasoline filling station and retail ice house for more than ten years prior to the commencement of this action; that on March 2, 1938, a plant for the manufacture of ice was constructed upon the premises

and had been in operation since that time. The answer then set out various ordinances of the city of Parsons, which are not important here in view of the disposition we have concluded to make of the case. The answer further stated that on October 10, 1940, the defendants had purchased the ice plant in good faith and believing it was in lawful operation upon the premises, and relying upon the ordinances set out; and that in the summer of 1943 defendants commenced the construction of a frozen food locker for the benefit of families of Parsons and that the ice manufacturing business was necessary in the city of Parsons; that the premises were located at a place where there were various other noises from the operation of an interurban line upon which locomotives and freight cars operate and that various automobiles and trucks operated upon the highway in front of the plant; that the value of the property was in excess of $20,000. The answer admitted the passage of ordinance No. 3179, which was the ordinance upon which the first cause of action was based. The reply of the plaintiff was a general denial.

The plaintiff filed a motion for judgment on the pleadings as to all of the causes of action. This motion was overruled.

The defendants also filed such a motion, which was overruled.

At the conclusion of the evidence of the state the defendants interposed demurrers to the evidence on the ground that it had not proved any cause of action. These demurrers were sustained by the trial court as to the first and third causes of action but overruled as to the second.

The trial court proceeded to hear evidence of the defendant as to the second cause of action and made findings of fact and conclusions of law. The court made the following findings of fact, which are of particular interest to us here:

"11. The operation of said plant creates noise, the volume and intensity of which varies with the circumstances and depends upon several factors, including sensitivity of hearing, atmospheric conditions, remoteness, the volume of other nearby noises, such as those caused by motor vehicle and railway traffic, and also whether the windows and doors of the plant and of residences in the neighborhood are open. Some of the noise from the plant is continuous while the plant is in operation, both by day and by night. One such noise is that made by the falling of the water in the cooling tower and which is similar to the sound of a hard rain. This noise can be heard for about 100 feet. Another such noise is the humming sound made by the motors, and which under favorable conditions can be heard for about 150 feet; but this noise is not more intense than that made by the average automobile engine. There is also some noise from the operation of the other machinery, among which is a

rumbling sound made by the blower and which is audible for as much as 200 feet. All of these sounds are more or less constant and regular and combined create a rhythmical background or undertone.

"12. Other noises are made at the plant, which are not regular and continuous, but are intermittent, sudden, and sharp noises. Some of these are metallic clashing and clanging noises, such as arise from the handling of ice cans, particularly when empty. These cans are dropped by the employees handling them as often as two or three times during the course of twenty-four hours, and at times the empty cans are tipped over and fall on the floor. There are also thumping and rumbling sounds. When the cans are emptied, the ice is permitted to slide out of them onto a wooden runway, over which it slides to the ice storage room. Cakes of ice are dragged or pushed over the floor of the ice storage room both when being placed in said room and taken therefrom. When ice is to be delivered to vehicles it is pushed out of a trap door on the dock, which trap door falls back to position and makes a slamming noise. Such noise of thumping is also made when ice is placed on the floor of the vehicle being loaded. Also persons driving up to the dock attract the attention of the employees by sounding their motor horns, and often such persons make further noise by racing their motors. Conversations also take place between the employees and other persons in and about the plant in a loud tone of voice. The noise herein referred to can be heard for approximately 150 feet.

"14. The noises enumerated in finding 11, whether made by day or by night, and the noises enumerated in finding 12 when made during the daylight hours, are not unduly annoying and produce no more disturbance than the noises customarily incident to urban life, particularly in proximity to busy trafficways such as Main Street is in the locality in question. Under such circumstances said noises do not amount to a public nuisance.

"15. When made during the hours customarily devoted to rest, the noises enumerated in finding 12 are by reason of their irregularity, suddenness, volume and intensity, annoying and disturbing to the residents of the vicinity. Said noises penetrate the homes of such residents and hinder and prevent such residents from securing proper rest and sleep, so that such residents are deprived of the quiet and peaceable enjoyment of their homes. Such noises from said plant between the hours of 10:30 P. M. and 6 A. M. constitute a public nuisance."

The conclusions with which we are interested were as follows:

"3. The right invaded by defendants as found in finding 15 is the right of public to maintain the peace and quiet of the neighborhood in question, to protect which right the State of Kansas can maintain this action.

. . . . . . . . . . . . .

"6. The defendants, N. E. Vandyne and Howard Vandyne, personnally and as partners under the name of The Parsons Ice Company, and their successors in interest should be enjoined and restrained from operating said plant or permitting the same to be operated in such manner as to cause annoyance or disturbance to nearby residents from noise occurring between the hours of 10:30 P. M. and 6 A. M. and caused by the clashing and clanging of metal surfaces;

the rumbling and thudding made by the movement of heavy objects and particularly from the handling of ice cans and cakes of ice; from the slamming of doors; and from loud talk and shouts."

Following these conclusions, the court issued an injunction substantially in the words of the sixth conclusion. After the usual post-trial motions, judgment was entered in accordance therewith. Both sides have appealed.

We shall first consider the argument of the plaintiff as to the first and third causes of action.

The first cause of action was based on the fact that the ice manufacturing plant was built on the lot in question after the enactment of the zoning ordinance and that this ordinance placed the lot in question in the commercial area where no manufacturing plants were permitted. The plaintiff cites and relies on the numerous authorities wherein we have upheld the validity of zoning ordinances. We have examined these authorities. We have found none that makes it the duty of the county attorney or confer on him the power to bring actions to enforce a zoning ordinance. It is true that the plaintiff asked in its prayer that the business be declared a public nuisance. The allegations in the petition, however, set out a state of facts where the plant is in that location in violation of the ordinance. The authority of cities to enact zoning ordinances has been upheld many times by us.

The matter of zoning in cities is comparatively new. The subject was first provided for by chapter 100 of the Laws of 1921. That chapter covered the entire subject. Up to that time cities had not possessed authority to enact general zoning ordinances. Following its enactment many cities of the state took advantage of it. Section 5 of that chapter provided as follows:

"Cities which shall hereafter pass ordinances under the provision of this act shall have power to declare the violation thereof a misdemeanor and punishable by a fine not to exceed five hundred dollars ($500) for each offense and to provide that each days' violation shall constitute a separate offense and said cities shall further have the authority to maintain suits or actions in any court of competent jurisdiction for the purpose of enforcing the provision of such ordinance and to abate nuisances maintained in violation thereof."

The chapter has been amended in some small particulars from time to time, but the above section has never been amended. It appears now as G. S. 1935, 12-710. It will be seen that this statute confers on cities the authority to declare the violation of a zoning ordinance to be a misdemeanor, but it goes further. It also au-

thorizes cities to maintain actions for the purpose of enforcing such provisions. No reason appears why such ordinance should be enforced by the state any more than any other ordinance. We all know the general rule is that a city has exclusive power to enforce its ordinances. The inclusion of section 5 of chapter 100 of the Laws of 1921 is indicative of a determination on the part of the legislature that as to zoning ordinances this power should be in the cities, and furthermore that actions might be brought to enforce it, making it unnecessary for the cities to rely wholly on prosecution for violation of an ordinance, since that might turn out to be a somewhat ineffective remedy. The section which defines the duties of county attorneys generally is G. S. 1935, 19-702. It provides as follows:

"It shall be the duty of the county attorney to appear in the several courts of their respective counties and prosecute or defend on behalf of the people all suits, applications or motions, civil or criminal, arising under the laws of this state, in which the state or their county is a party or interested."

This section contains no provision which confers on county attorneys the power to bring actions in the name of the state to enforce city ordinances. It refers to laws of the state and to actions in which the state or their county is a party.

The defendants raised this question at every stage of the case, on the motion to dismiss, in their answer and again on their demurrer to plaintiff's evidence. The action of the trial court in sustaining the defendants' demurrer to plaintiff's evidence as to the first cause of action was correct.

We shall next consider the action of the trial court in sustaining the demurrer of the defendants to the evidence of plaintiff as to the third cause of action. This cause of action is based on two general situations, one the fact that this plant uses for business purposes that portion of the street that lies between the curb and the lot line, commonly known as the parking area, and the other the fact that traffic to and from the plant made traffic so heavy in the street that the citizens of Parsons were often prevented from using the street.

The petition alleged that this constituted a nuisance. In stating this cause of action reference was made to the proximity of the ice plant to certain schools, hospitals, junior colleges and other public buildings.

There was no evidence introduced, however, bearing on what effect, if any, the maintenance and operation of this ice plant had on the use of the buildings. Plaintiff relies in a large measure on what this court said in *State, ex rel., v. Swift & Co.*, 127 Kan. 817, 275

Pac. 176 and *State v. Rabinowitz,* 85 Kan. 841, 118 Pac. 1040. *State, ex rel., v. Swift & Co.,* was a case where the petition alleged the erection of a building and its maintenance in the business of purchasing and selling "poultry, eggs and kindred products . . . ; that in the conduct of their business defendants' automobile trucks . . . during all hours of the day . . . appropriate and use the street . . . and deprive the public from the use of that portion of the street." That pedestrians were unable to use the sidewalk in front of defendants' place of business. The petition contained the following allegation:

"The petition further avers that said encroachments and said obstructions so created and maintained by defendants are unlawful and without right, and constitute a public nuisance and deprive the public of a large and material portion of said street dedicated and designed for public use, and have caused and are causing great and irreparable injury to persons having occasion to travel over and upon said street, and renders the use of said street by said persons unsafe and dangerous."

This case turned in our decision on whether the state could bring an action by the county attorney to enjoin and abate the operation of such a business as a nuisance. A demurrer to the petition was overruled. On appeal we held that such an action could be maintained by the state. *State v. Rabinowitz,* supra, was a case where the petition alleged that intoxicating liquor was being sold by defendants at certain described places in violation of law. The state sought to enjoin these acts. This court affirmed a judgment which overruled a demurrer to the petition. The question in the case was the right of the state to bring the action.

Stated succinctly the petition in the third cause of action is to the effect that there was no sidewalk in front of this ice plant and the citizens of Parsons were often deprived and prevented "from the public use of" the street in front of the plant by reason of the congested traffic unlawfully thereon. We will pass by the question as to whether these allegations state a nuisance. Our question is whether the plaintiff offered substantial evidence to prove these allegations. One of the defendants offered as a witness by plaintiff testified:

"A. From the curb line of the street on the east to the east wall of our building is about 21 feet.

"Q. And you use that entire area for traffic purposes? A. Well, we use a portion of it.

"Q. What portion do you use? A. I wouldn't say; it varies."

Another witness for the plaintiff testified as follows:

"I have seen an awful lot of automobiles on 29th Street east of the ice plant and as many as 15 or 20 along that ice plant. They were standing along the west side of the street taking their turn to get to the plant to get ice. I have seen cars at the loading dock standing end-wise to get ice. I saw trucks loading there. This last summer ('43) I would leave early in the morning and there was quite a number of cars coming and going. During August, I saw cars standing there taking their turns. They were backed up to the corner at 29th and Washington, where Mr. Wellman lives. They were backed up to Main Street. I have seen them waiting their turns along the south end of the lot. That occurred daily for quite a while during the warm weather. The same crowded condition of 29th Street existed during the summer of 1943. I would say there would be between 15 and 18 waiting to get ice."

The testimony of several other witnesses was to this same general effect. One witness stated that she would have to wait until the travel from the south could get by before she could go south around the corner. Another that the cars were parked across her driveway occasionally. At the outset it may be stated that there is no substantial evidence of any such a condition as that described in *State, ex rel., v. Swift & Co.,* supra.

Since this action was instituted by the county attorney in the name of the state the question arises whether the proof was of a public nuisance, since only public nuisances may be enjoined by the state. See 39 Am. Jur. 379.

In the case of *Fort Smith v. Western Hide and Fur Co.,* 153 Ark. 99, 239 S. W. 724, the court held:

"The distinction between a public and private nuisance lies merely in the extent of injury or annoyance which results therefrom; if injury results only to a few, the nuisance is private, and the remedy is confined to those who suffer from the effects of the nuisance; but if the injury is sufficient in extent to become common to all persons who may come within its influence, it is of a public nature, and the remedy is by action on the part of the municipality." (Syl. ¶ 1.)

See, also, *Kinney v. Koopman & Gerdes,* 116 Ala. 310, 323, 22 So. 593, 67 A. S. R. 119.

The only evidence offered which even tended to prove that anyone was damaged was that of the woman who had to wait to drive down the street and the one whose driveway was blocked. This does not constitute substantial evidence that the general public suffered in any way by the maintenance or operation of this ice plant. The business itself was legitimate. The cars of which witnesses spoke were there on lawful business. From this record it appears that these cars were those of customers. There is no evidence whatever

that the drivers of these cars violated the law in any manner. The mere fact that a business attracts a great many customers to it who come in cars does not constitute the business a public nuisance. There must be some annoyance or damage to the public. We find no such evidence as that in this record. It follows that the trial court was correct in sustaining defendants' demurrer to the evidence of plaintiff.

We shall now consider the judgment of the trial court in the second cause of action. It will be remembered this cause of action was based on the noises made in the operation of the plant and the maintenance of a flood light. The findings of the trial court in which those noises are placed in two different groups have already been set out in this opinion. The same rules apply to this cause of action as to the third. The evidence offered was subject to the same criticism as that offered to the third. It fell short of proving that there was any danger or annoyance to the public caused thereby. It follows that the trial court erred in not sustaining the demurrer of defendants to plaintiff's evidence as to this cause of action.

The judgment of the trial court as to the first and third causes of action is affirmed; that as to the second cause of action is reversed with directions to render judgment for the defendants.

BURCH, J., not participating.