MAX SCHLOTFELT, appellee, v. VINTON FARMERS' SUPPLY COMPANY, INC., appellant.

No. 50281.

(Reported in 109 N.W.2d 695)

1103

1104

June 13, 1961.

Beecher, Buckmaster, Beecher & Lindeman, of Waterloo, for appellant.

M. H. Bordewick, of Vinton, and George C. Claassen, of Cedar Rapids, for appellee.

THOMPSON, J.—Plaintiff's action was originally brought at law, but by stipulation of the parties was tried in equity. It alleged the creation and maintenance of a nuisance by the defendant in the operation of its feed grinding, feed mixing and fertilizer sales business in the city of Vinton, asked injunctive relief and further prayed for damages. The trial court entered its judgment and decree awarding plaintiff damages in the sum of $3605 for depreciation in the rental value of plaintiff's property adjoining defendant's plant, and granting an injunction against the use of a public alley running along the south side of plaintiff's residence and of the plant for defendant's business purposes; ordering defendant to arrange its entrances and exits so that defendant and its customers would not use the alley in going to and from its plant; restraining defendant from operating its machinery so as to cause vibration, noise and annoyance to the occupants of plaintiff's property; and from so using its plant as to cause oat hulls, dust, or noxious odors to be emitted into the air either by normal or accidental means. The decree was entered on June 25, 1959, and the defendant was given until September 1 next to comply with the injunctive part of the decree; after that date the court decreed that a further hearing should be had to determine whether the defendant had corrected its procedures in conformity to the court's judgment. The defendant apparently did not elect to make the ordered changes, but on July 23, 1959, filed its notice of appeal to this court. We shall therefore consider the decree and judgment as final.

On May 6, 1939, the plaintiff acquired title to Lot 1 in Block 3, South Vinton, an addition to the city of Vinton, and has owned it at all times since. The property was then and

still is improved by a substantial, modern, two-story residence. At the time plaintiff acquired his title Lots 2 and 3, lying immediately west, were unimproved. In 1942 the defendant purchased these two lots, and soon thereafter erected on Lot 3, the westerly one, a building 60 feet east and west and 120 feet north and south. It then began the business of grinding and mixing stock feeds, and selling fertilizer, and has since at all times continued handling feeds and fertilizer and livestock equipment, both at wholesale and retail. It grinds feed for farmer customers, and sells fertilizer and other equipment. The average employed force is about eight persons.

At the time of the erection of the first building, known in the record as No. 1, Vinton had no zoning ordinance affecting this block. About March 14, 1946, the city adopted a zoning ordinance which classified the properties of plaintiff and defendant as being in a restricted residential district. In March 1958 that part of Block 3, which includes these properties, was rezoned as a restricted industrial area. The plaintiff contends that there is no proper proof of this last-referred to ordinance; but we think, although the matter is not of great importance, there was a sufficient showing that since 1958 the properties have been in a restricted industrial zone. There is a good deal of discussion in the briefs of the effect of the zoning ordinances or absence of same, and whether the defendant did or did not secure permits for some of its buildings, if they were required. But as we view the case none of these questions is of controlling weight and we give them little consideration.

In March 1946 the defendant built an addition to the No. 1 building. This structure was on Lot 2, immediately adjoining plaintiff's lot. Defendant's two lots have a combined area about 133 feet square. The 1946 building was 40 feet east and west and 120 feet north and south. It is a cement block fireproof structure, and its easterly wall is about one foot from the west line of plaintiff's property, and about 8 feet from the rear porch of his house. Apparently the east wall of the No. 2 building was 20 feet in height. In 1951 the defendant built a silo at the southeast corner of its property. The east edge of this structure is within a few feet—from 2 to 6 feet, as shown

by the evidence—of the west side of plaintiff's garage, which is attached to his house. In 1954 or 1955 the silo was enlarged by an addition on the top, which brought its total height to 36 feet. This was augmented by dust collectors 13 feet high, so that the silo with the additions is now 49 feet above the ground. It is within 10 to 12 feet of the southwest corner of plaintiff's house.

It is evident that the No. 2 building, with the silo at the south end, must seriously interfere with plaintiff's enjoyment of light and air. However, the trial court did not grant any injunctive relief against this condition, and plaintiff has not appealed. It is discussed, however, in connection with the question of damages allowed because of the decreased rental value of plaintiff's property. Other facts will be referred to in the divisions following.

I. Certain principles of law applicable to nuisances of the sort claimed to exist here are well settled. Some definitions are found in our statutes. Section 657.1, Code of 1958, provides: "Whatever is * * * offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and a civil action by ordinary proceedings may be brought to enjoin and abate the same and to recover damages sustained on account thereof." Following this is a definition of nuisances which includes this language found in section 657.2: "The following are nuisances: 1. * * * using any building or other place for the exercise of any trade, * * * which, by occasioning noxious exhalations, offensive smells, or other annoyances, becomes injurious and dangerous to the health, comfort, or property of individuals * * *."

These statutory definitions and enumerations do not modify the common-law rule applicable to nuisances. Kellerhals v. Kallenberger, 251 Iowa 974, 979, 103 N.W.2d 691, 695; Riter v. Keokuk Electro-Metals Co., 248 Iowa 710, 721, 82 N.W.2d 151, 157.

Another well-established rule is that one must use his own property so that his neighbor's comfortable and reasonable use and enjoyment of his estate will not be unreasonably

interfered with or disturbed. Kellerhals v. Kallenberger, supra, page 980 of 251 Iowa, page 694 of 103 N.W.2d; Amdor v. Cooney, 241 Iowa 777, 783, 43 N.W.2d 136, 141. We have also held: "A fair test as to whether the operation of such industry constitutes a nuisance has been said to be the reasonableness of conducting it in the manner, at the place and under the circumstances in question." Riter v. Keokuk Electro-Metals Co., supra, 248 Iowa 710, 722, 82 N.W.2d 151, 158. And to justify the abatement of a claimed nuisance the annoyance must be such as would cause physical discomfort or injury to a person of ordinary sensibilities. Kellerhals v. Kallenberger, supra, page 980 of 251 Iowa, page 694 of 103 N.W.2d, and citations.

II. The record shows that the location of plaintiff's property and of defendant's plant is in what is generally a residential district of Vinton. There are two neighborhood groceries within a few blocks; there is a woodworking shop conducted in a small way in a garage; and there is some evidence of a filling station and a beauty salon not far away. The Rock Island railroad tracks are just north of the location. But the area is chiefly devoted to substantial residences, and has been so at all times material here. The city of Vinton had a population as shown by the Federal census, in 1940, of 4163; in 1950, of 4307; and in 1960, of 4781. It is a beautiful and prosperous small city; but it is evident it is not a great industrial center. We have said that we do not regard the question of the zoning of the tract in which the properties are located as of importance. Nor do we consider the issuance of permits, or their refusal, as in any way controlling. The city could not, by zoning as an industrial district, or issuing permits for construction, authorize the creation or maintenance of a nuisance. Dawson v. Laufersweiler, 241 Iowa 850, 856, 43 N.W.2d 726, 730, and citations. In Pauly v. Montgomery, 209 Iowa 699, 705, 706, 228 N.W. 648, 651, we said: "The city could not, by its action in issuing a permit *or otherwise*, authorize appellees to so conduct their business as to create a nuisance." (Italics supplied.) This rule is somewhat modified in Dawson v. Laufersweiler, supra, page 856 of 241 Iowa, page 730 of 43 N.W.2d, by the statement that granting a permit is an expression of

municipal opinion which it is proper to consider on the matter of nuisance, but is not conclusive. In fact, it seems it should be given little attention in the case at bar. A building permit, or a commercial or industrial zoning, cannot be claimed to be an approval by the city of the conduct of a business so that a nuisance is caused to adjoining property owners.

III. We come next to a fact which we think is of much importance in the case at bar. It is uncontradicted that the plaintiff "was there first." When his house was built and first occupied is not shown; but certainly it was there in 1939 when plaintiff purchased it. Defendant's lots were then vacant; it was not until 1942 that its first building was erected. This brings into application another rule also well settled both by authority and by reason. In Mahlstadt v. City of Indianola, 251 Iowa 222, 231, 100 N.W.2d 189, 194, we quoted with approval from 66 C. J. S., Nuisances, section 8e, page 746, with reference to the distinction between a long-established business and a new business erected or threatened in the same vicinity. We pointed out, through this quotation and our own language, that it requires a much clearer case to justify a court of equity in interfering with a business long present than with a new business. We also said that the right of a person to pure air may be surrendered in part by his election to live in a location that is already occupied by business or industry which fouls the air with smoke, gas, soot or other impurities. The converse of this is, of course, that one has a considerably greater right to protest against the conduct of a business in a residential area where the objector has established his home with no knowledge that such an invasion is contemplated or may be attempted in the future. Priority of occupation is a circumstance of considerable weight, and it militates strongly in favor of the plaintiff here. The district, including plaintiff's home, was residential before defendant's plant was built; and in fact, at least up to the time of the trial, there was no other industry in any way comparable to that operated by defendant within an area of many blocks.

IV. The trial court ordered the defendant to cease operation of its machinery unless it could be done without

annoyance to the occupants of the plaintiff's dwelling; by which we understand is meant that the machinery must be operated, if at all, so as not to cause undue noises and vibrations which would cause annoyance and discomfort to persons of ordinary sensibilities. The court also restrained the defendant from so operating its plant as to cause dust, oat hulls, or other particles of material, or noxious odors to be emitted into the air by normal or accidental means. We have not discussed the evidence bearing on these matters in detail; but we think the trial court's findings of fact and decree are well supported in the record. We give weight to the findings of the trial court, in equity matters, especially where the credibility of the witnesses is involved; but it is hardly necessary to resort to this rule to sustain the findings in the instant case. That noise may be a nuisance, see Kellerhals v. Kallenberger, supra, and Higgins v. Decorah Produce Co., 214 Iowa 276, 282, 242 N.W. 109, 112, 81 A. L. R. 1199, 1205. As to the dust, oat hulls, etc., the defendant says it is no longer shipping the oat hulls; and it has installed dust collectors and done everything reasonably possible to remove the causes of pollution of the air. But the evidence indicates it has not done enough, and there is still much annoyance to those residing in plaintiff's property and elsewhere in the neighborhood.

In Bowman v. Humphrey, 132 Iowa 234, 236, 237, 109 N.W. 714, 715, 6 L. R. A., N. S., 1111, 11 Ann. Cas. 131, we said: "If the wrongful condition exists, and the person charged therewith is responsible for its existence, he is liable for the resulting damages to others, though he may have used the highest degree of care to prevent or minimize the deleterious effects. Nor is it any answer to say that a creamery, or tannery, or industrial plant of any kind is a perfectly legitimate enterprise, or one of great and general convenience and benefit * * *." We quoted this with approval in Andrews v. Western Asphalt Paving Corporation, 193 Iowa 1047, 1052, 188 N.W. 900, 902.

The defendant says that these provisions of the decree, if enforced, will prevent the operation of its business; will, in fact, necessarily result in its closing. We can only hope this view is unduly pessimistic; for, as between the plaintiff, who

found his clean and quiet residential neighborhood invaded by a business enterprise which causes loud and unusual noises and pollutes the air with dust and other matters, and the defendant, which erected its plant in such a neighborhood with full knowledge, the equities are altogether with the plaintiff. The defendant must have known of the character of the area and of its duty not to create or maintain a nuisance there when it built its plant; and the record shows that there were numerous complaints from time to time from householders in the vicinity both before and after the erection of the additions in later years. It must abate the nuisance it has created, even if unfortunately it means it can no longer operate its plant.

We think however, the word "accidental" should be eliminated from that portion of the decree which deals with the emission of dust, oat hulls, etc. It would be inequitable to penalize the defendant for contempt for a purely accidental happening.

V. The court enjoined the defendant from using the alley which runs along the south side of both properties except as "a usual and normal use of said public alley, applicable generally to residence districts in the city of Vinton, and [the injunction] shall not require the defendant to prevent its customers from making use of said public alley when said customers are not involved in the act of entering defendant's premises, or leaving defendant's premises, involving business transactions with the defendant." The defendant was further ordered to so arrange the entrances to and exits from its place of business that its customers will in the normal course of business not use the alley in coming to and leaving the plant. It was further enjoined from making any use of the alley, "by itself or through its customers", which creates noises or disturbances of peace and quiet in excess of noises normally prevailing in connection with the use of public alleys in residential districts.

In this we think the court went too far. The question can be decided on the fact that the decision on this point goes entirely beyond anything in the pleadings. The plaintiff's petition, as amended, makes no reference to any claimed abuses of the use of the alley, except that at one point it alleges that

defendant has loaded waste materials into large trucks immediately back of and adjacent to plaintiff's home, through which process quantities of dust have been carried upon plaintiff's premises. If we assume this means the trucks were loaded in the alley, that part of the injunction which restrains defendant from permitting the escape of dust or other noxious matter so as to be emitted into the air is sufficient to protect the plaintiff. The prayer of plaintiff's petition is that the defendant be restrained from using its property in such a way as to subject plaintiff and his home to further damage.

In a later amendment the plaintiff prayed for general equitable relief. A prayer for such relief is to be construed liberally; but there must be something in the facts pleaded that will support the additional relief. We have said: "The relief granted under the general prayer must be consistent with the case made by the pleadings and must be such as will not surprise the defendant." Skemp v. Olansky, 249 Iowa 1, 6, 85 N.W.2d 580, 583; Paintin v. Paintin, 241 Iowa 411, 417, 41 N.W.2d 27, 30, 16 A. L. R.2d 659.

Here, except for the allegation that the loading of trucks at the back of plaintiff's home caused further pollution of the air, we find no reference to or any complaint of the use of the alley. There was considerable evidence of the heavy traffic in the alley caused not only by the defendant's own trucks but by customers coming and going with trucks and tractors for the purpose of bringing feed to be ground, purchasing fertilizer, or transacting other business with the defendant; and it appeared that these occasioned considerable noise and at times tractors were left standing in the alley while their owners went to the business district for shopping or other purposes. The trial court, perhaps overlooking the lack of supporting pleading, said that one of plaintiff's complaints is: "Conversion of the alley adjoining plaintiff's premises to commercial and excessive use not found in a residential neighborhood; * * *." We are unable to find such a complaint pleaded, or any facts set out in the petition or amendments which would support it.

Nor do we think, apart from the matter of pleading, this part of the court's decree can be upheld. The alley is,

as the court states, a public thoroughfare. Customers of a commercial business must approach it over some public way; and generally, immediately or remotely, they will traverse some residential district in so doing. Here, the effect of the injunction would be to compel the defendant to so arrange its entrances and exits that some other street, also in a residential district, since the proof is that the area for several blocks around is residential, would necessarily be used; perhaps to the detriment of persons living thereon. It may be argued that it would be better to use a street, presumably somewhat wider than the alley in question; but we do not think this consideration justifies the prohibition of the use of the alley altogether. Again, it is urged by the defendant that it should not be compelled to control its customers and in any event could not do so. There is merit in this contention. Of course those who have business with the defendant may not create a nuisance in the alley nor may they block it with standing vehicles. But this is something over which the defendant may not exercise control. It is conducting a lawful business; and the fact that it attracts many customers does not in itself make it a nuisance. State ex rel. Burton v. Vandyne, 159 Kan. 378, 155 P.2d 458, 464. It is true the cited authority has reference to a public nuisance. But we find nothing in the record in the case at bar which shows that the plaintiff has suffered special damage because of the travel through the alley, other than the possible annoyance occasioned in any residential district because of heavy traffic made necessary in order to reach the premises of a legitimate enterprise. It is true the operation of an amusement place, such as a baseball park, which necessarily attracts large crowds, may be enjoined if accompanied by annoying noise, trespasses, or danger. 66 C. J. S., Nuisances, section 28, page 782. But there must be a substantial showing of nuisance, and we think no such showing appears here. An injunction will not issue against a defendant unless he is in control of the action restrained. Under the injunction granted by the trial court the defendant would be in contempt if its customers, or one of them, drove through the alley to reach its place of business; and we know of no way, short of abandoning the business, by which it could prevent

this. 43 C. J. S., Injunctions, section 34, page 467. Since we have held that in any event this part of the injunctive relief granted is beyond the scope of the pleadings, we shall not further analyze the issue. The decree must be modified by striking out all that part which forbids use of the alley in reaching defendant's plant and requires it to change its place of entrance and exit.

VI. The defendant urges that this is not a proper case for injunction, but at most any relief granted should be confined to damages. It cites Riter v. Keokuk Electro-Metals Company, supra, where we so held. But the circumstances here are different. Plaintiff was in present occupation of his premises when the defendant's plant was built and its operation commenced. The plant is located in what has been at all times and still is substantially a residential district. As between the plaintiff, whose property and rights have been seriously injured by the operation, and the defendant, which must be held to have known of the existing circumstances, we must agree the plaintiff is entitled to injunctive relief.

VII. The petition asked, and the court allowed, money damages for the plaintiff for diminution in the rental value of his property at the rate of $35 per month for a period of five years prior to the commencement of the action to the date of the decree. There was substantial evidence that the rental value of the property, without the presence of defendant's plant and its attendant annoyances and nuisances would be $90 per month; but that under the existing conditions it was only $25 per month. The petition alleged only a value of $85 per month without the alleged nuisances, and of $35 per month with it; but the difference between the pleaded sums of $85 and $35 per month is still considerably in excess of the amount allowed by the court. The defendant says that the court took into consideration the loss of rental value through the cutting off of light, air and view; and that these are not proper elements of damage. We do not decide the point. The case was in equity and is triable de novo here on appeal. We make our own evaluation of the damages. It is our conclusion that, omitting the question of denial of light, air circulation, and

view, the injury occasioned by the emission of dust, oat hulls, and other offensive matter into the air and the noise occasioned by the operation of defendant's machinery, amounts to at least the sum allowed by the trial court. The plaintiff has not appealed, and so cannot have a more favorable judgment here than he received below. Kellerhals v. Kallenberger, supra, loc. cit. 251 Iowa 976, 103 N.W.2d 692, and citations. The amount allowed by the trial court was considerably less than was claimed in the pleadings and supported by substantial evidence. It appears that the plaintiff removed from the property some time before the trial of the case below, and he testifies it was because of the nuisance created by the defendant. After the house was vacant for some time, he secured a tenant at a rental of $25 per month, with the understanding that conditions would be accepted as they then existed.

We have here a case of a continuing nuisance, subject to abatement. In such case the measure of damages is the diminution in the rental value of the property caused by the nuisance, plus any special damages. The trial court found no special damages, nor do we; so that the damages are measured by the rule of decrease in rental value. Kellerhals v. Kallenberger, supra, loc. cit. 251 Iowa 981, 982, 103 N.W.2d 691, 695, and citations. We think a diminution in rental value of $35 per month is supported by the competent evidence, and affirm the trial court's holding at this point.

VIII. A matter of practice must be discussed. The record before us is unnecessarily long. It consists in great part of questions and answers copied from the transcript. After the defendant, as appellant, submitted a proposed typewritten abstract of the record, the plaintiff objected and insisted upon the substitution of the evidence in the form finally adopted for the printed record. This was done over the defendant's protest, but the trial court said: "It is possible that the proposed amended abstract includes the transcript of more questions and answers than are necessary, but little this court can do about it under the circumstances, having been so filed and so proposed by appellant without the court itself actually preparing the abstract of the record."

If the court meant that the inclusion of the many questions and answers was proposed by the defendant, it was in error, as the record shows. The defendant objected to the procedure, and moved that this court tax costs against the appellee. Rule of Civil Procedure 340(g) says: "The supreme court may impose or withhold costs for any addition or substitution of irrelevant matter, or the use of needless questions and answers for the narrative statement. * * *." This is not a case, such as we had in Haas v. Evening Democrat Co., 252 Iowa 517, 535, 107 N.W.2d 444, 455, in which the party moving for taxation of costs because of a needlessly profuse record had stipulated to its correctness. Here the appellant objected throughout. We think a great part of the testimony submitted by questions and answers should have been abstracted, and much of it omitted. One half the cost of printing the record will be taxed to the plaintiff. After this is done, one fourth of the remaining costs will be taxed against the plaintiff and three fourths against the defendant.

The decree and judgment of the trial court are modified as indicated in Divisions IV and V; otherwise affirmed.—Modified and affirmed.

All JUSTICES concur except SNELL, J., who takes no part.