JAMES L. BATES et ux., appellees, v. QUALITY READY-MIX Co., et al., appellants.

No. 52653.

(Reported in 154 N.W.2d 852)

DECEMBER 12, 1967.

REHEARING DENIED FEBRUARY 5, 1968.

Mosier, Mosier, Thomas, Beatty & Dutton, of Waterloo, for appellants.

Swift & Swift, of Manchester, for appellees.

MOORE, J.—This is a law action, as authorized by Code section 657.1, to enjoin the operation of defendant's ready-mix plant and for damages based on plaintiffs' claim its creation and maintenance near their residence constituted a nuisance. Following trial to the court judgment for damages and an injunction was entered against defendant, The Quality Ready-Mix Co. Plaintiffs had previously voluntarily dismissed their action against certain officers and employees of the company. The company has appealed and will be referred to as defendant.

I. Defendant's first assigned error, the trial court's finding and judgment the operation of its ready-mix plant constituted a nuisance as to plaintiffs, is not sustained by sufficient evidence.

■ This action was filed and tried at law. Our review is not de novo but only on errors assigned. The trial court's findings of fact are binding on us if supported by substantial evidence. Citation of authority is unnecessary. Rule 344(f)(1), Rules of Civil Procedure. We will not weigh the evidence or the credibility of the witnesses. Further, the evidence will be construed in the light most favorable to the trial court's judgment. Staley v. Fazel Bros. Co., 247 Iowa 644, 648, 75 N.W.2d 253, 255; McCune v. Muenich, 255 Iowa 755, 757, 124 N.W.2d 130, 131; Hamilton v. Wosepka, 261 Iowa 299, 154 N.W.2d 164.

II. Plaintiffs in 1952 acquired a two-acre tract on the north side of highway 20 a short distance east of the city limits of Independence. Situated thereon is their home, a double garage and a small utility building. Plaintiffs have lived there continuously since 1952. One side of the double garage is used by Mr. Bates to make minor repairs on his truck which he uses as an over-the-road driver.

In 1962 defendant corporation bought a 42-acre tract adjacent to the east edge of plaintiffs' property. Some of the land lies north of that of plaintiffs. In the spring of 1962 defendant erected a ready-mix plant 72 feet east of plaintiffs' fence line and approximately 270 feet northeast of their house. The plant was immediately put into operation and continued at trial time in January 1966. It was enlarged and enclosed as business increased. This photograph, Exhibit A, seems to clearly show the appearance and location of the properties at trial time.

The primary purpose of the plant is to deliver ingredients for concrete into "batch trucks" which then mix and deliver the concrete to customers. The ingredients are delivered to the plant by dump trucks which empty their loads of sand and gravel before the material is elevated into overhead storage bins by means of an elevator and conveyor system. Huge bulk cement tanker trucks bring the dry cement to the plant where a blower mechanism forces the cement from the truck to an overhead bin.

The plant is approximately 300 feet north of the north edge of highway 20 and is served by a dusty gravel road leading from the highway to the plant and then circling up an incline

Exhibit A

around the east side to service stockpile areas to the north and northwest of the plant. Defendant's road is 80 feet east of plaintiffs' east fence line.

Plaintiff, James L. Bates, testified in detail concerning the loud disturbing noises made by the operation of the plant at all hours of the day including very early morning and late evening hours. His many complaints to officers of defendant company met with agreement something would be done about the noise but resulted in no material improvement. In fact the noise and disturbance became worse with defendant's increase in business.

Mr. Bates testified: when sand stuck to the metal truck boxes during unloading the metal endgate was banged against the box creating an annoying loud noise; when the motor on a tanker truck was revved up for the purpose of blowing the dry cement to the bins at the top of the plant it created a real loud whining noise which lasted from 20 to 45 minutes during each delivery; dry cement deliveries were made as often as four or five times a day and as early as four or five a.m. and as late as midnight; when the dry cement was blown to the top of the plant it created cement dust and when the wind was in the east the dust was so bad in plaintiffs' yard it got into his eyes compelling him to go inside; when rock was elevated to the top of the plant it created a loud clanging noise and when the rocks dropped into the metal bin it made a terrible racket and would awaken him if asleep; when sand was elevated an agitator was used to keep it from sticking which sounded like an air hammer banging against the metal chute; this noise continued for periods as long as 15 to 20 minutes; when the batch trucks were loaded they pulled just outside the plant and revved up the motor to mix the cement, water, rock and sand before leaving; this extended from one to five minutes and made a terribly loud noise and would awaken a person; sometimes concrete remained in the batch trucks after deliveries and when this occurred a sledge hammer or air gun was used to knock the concrete loose from the metal; this cleaning process often took place early in the morning and made a very loud noise; on cold mornings some truck motors would not start which necessitated pulling by another truck; this resulted

in racing of motors when they started and more loud noises which sounded like the mufflers had holes in them and the batch trucks were equipped with air horns which were blown often early in the morning and "would raise me right out of bed."

He further testified dust also came from defendant's road leading from highway 20 and when the wind was from the east it was necessary to close windows and doors of the house in an effort to keep it out but in spite of plaintiffs' efforts the cement and road dust settled all over the house, rugs, curtains and household furniture.

Bates further stated the various noises which he described necessitated closing windows and doors but even then a conversation could not be carried on without raising voices or waiting for the noise to stop.

Plaintiff, Carrie Bates, testified substantially the same as her husband, James, about the noises and dust from defendant's plant. She further testified the cement dust from the plant settled on the leaves of trees along plaintiffs' east line and that they dried up and were "killed off." She stated her garden was adversely affected by the white dust and described her efforts in trying to combat it inside the house.

Mrs. Bates also testified concerning the use of a megaphone by defendant's manager and use of profane and vile language at the plant and the disturbance resulting to her and her visiting friends.

Both plaintiffs testified there was no such dust and noise as described by them prior to the establishment and operation of defendant's plant.

Other witnesses living in the vicinity testified to the noises and being disturbed by operation of the plant.

Some of defendant's witnesses admitted the emission of cement dust and making of described noises. Defendant's manager stated it was necessary to use the megaphone so the employees could hear his voice.

III. This action was brought and prosecuted under Code sections 657.1 and 657.2(1).

Section 657.1 provides: "Whatever is * * * offensive to the senses, or an obstruction to the free use of property, so as

essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and a civil action by ordinary proceedings may be brought to enjoin and abate the same and to recover damages sustained on account thereof."

Code section 657.2 states: "The following are nuisances: 1. * * * using any building or other place for the exercise of any trade, * * * which, by occasioning noxious exhalations, offensive smells, or other annoyances, becomes injurious and dangerous to the health, comfort, or property of individuals * * *."

Certain principles of law applicable to nuisances claimed to exist here are well settled.

■ The above statutory enumerations do not modify the common-law application to nuisances. The term "private nuisance" refers to an actionable interference with a person's interest in the private use and enjoyment of his land. Riter v. Keokuk Electro-Metals Co., 248 Iowa 710, 721, 82 N.W.2d 151, 157; Kellerhals v. Kallenberger, 251 Iowa 974, 979, 103 N.W.2d 691, 695; Schlotfelt v. Vinton Farmers' Supply Co., 252 Iowa 1102, 1107, 109 N.W.2d 695, 698.

■ One must use his own property so that his neighbor's comfortable and reasonable use and enjoyment of his estate will not be unreasonably interfered with or disturbed. Amdor v. Cooney, 241 Iowa 777, 783, 43 N.W.2d 136, 141; Schlotfelt v. Vinton Farmers' Supply Co., supra, pages 1107, 1108, 252 Iowa, page 698, 109 N.W.2d, and citations.

■ Noises may be of such a character and intensity as to so unreasonably interfere with the comfort and enjoyment of private property as to constitute a nuisance, and, in such cases, injury to health of the complaining party need not be shown. Higgins v. Decorah Produce Co., 214 Iowa 276, 282, 242 N.W. 109, 112, 81 A.L.R. 1199, 1205, and citations; Kellerhals v. Kallenberger, supra.

■ A fair test of whether the operation of a lawful trade or industry constitutes a nuisance has been said to be the reasonableness of conducting it in the manner, at the place and under the circumstances in question. Riter v. Keokuk Electro-Metals Co., supra, 248 Iowa 710, 722, 82 N.W.2d 151, 158; Schlotfelt v. Vinton Farmers' Supply Co., supra. Thus

the question whether a nuisance has been created and maintained is ordinarily one of fact, and not of law, depending on all the attending or surrounding circumstances. Each case of this nature must depend on its own facts. Casteel v. Town of Afton, 227 Iowa 61, 65, 287 N.W. 245, 247; Amdor v. Cooney, supra, 241 Iowa 777, 780, 43 N.W.2d 136, 139; Kellerhals v. Kallenberger, supra, 251 Iowa 974, 980, 103 N.W.2d 691, 695. See also 66 C.J.S., Nuisances, section 22, page 774; 39 Am.Jur., Nuisances, section 47, page 332.

IV. Defendant puts great stress on the fact the area along highway 20 near plaintiffs' residence was not entirely residential. It is undisputed that before defendant erected its ready-mix plant the area was occupied by some commercial enterprises as well as other residences. Across the highway south of plaintiffs' home a quarry has operated for several years. At first it was approximately 800 feet south of the highway. At trial time it was operating 2000 feet from the highway. The evidence shows clearly it or other commercial enterprises in the area created no excessive noise or dust. The noise and dust complained of by plaintiffs and neighbors came from defendant's plant.

It is uncontradicted plaintiffs "were there first." Priority of occupation is a circumstance of considerable weight and it militates strongly in favor of plaintiffs here. Mahlstadt v. City of Indianola, 251 Iowa 222, 231, 100 N.W.2d 189, 194; Schlotfelt v. Vinton Farmers' Supply Co., supra, 252 Iowa 1102, 1109, 109 N.W.2d 695, 699; 66 C.J.S., Nuisances, section 8e, page 746; 39 Am.Jur., Nuisances, section 197, page 472.

The trial court's judgment defendant's plant as created and maintained constituted a nuisance as to plaintiffs is supported by substantial evidence and therefore must be affirmed.

V. Defendant contends the trial court erred in granting an injunction which would result in closing down the plant at its present location. Defendant argues the injunction is too broad and is not supported by sufficient evidence. We do not agree.

The trial court gave this problem careful consideration. The findings and conclusions include:

"The remaining item to be determined is the question of the nature and extent of injunctive relief to be given plaintiffs in order to abate the nuisance created by operation of the defendant's plant. The court is satisfied that substantial abatement of the dust problem might be made by proper surfacing or treatment of the 300-foot driveway running north from U.S. 20 to the plant, although this would not entirely alleviate the dust problem and the periodic collection of fine cement dust on the land of the plaintiffs.

"After careful consideration, however, the court has reached the conclusion that there is no appropriate order which this court could enter which would abate the nuisance created by the noise of the operation of this plant as set forth in this decision and yet permit the plant to continue in operation. Accordingly the court has concluded that the only course which it may adopt which will properly safeguard the rights of the plaintiffs is to enjoin the operation of the cement plant in its present location."

In Schlotfelt v. Vinton Farmers' Supply Co., supra, an equity action, we affirmed granting of injunctive relief against the operation of a feed grinding and mixing business in the city of Vinton. Many of the facts are similar to those in the case at bar. There defendant also made the complaint the injunction meant closing of its business at the location involved.

In the Schlotfelt case at page 1111, 252 Iowa, pages 699, 700, 109 N.W.2d, we say: "The defendant must have known of the character of the area and of its duty not to create or maintain a nuisance there when it built its plant; and the record shows that there were numerous complaints from time to time from householders in the vicinity both before and after the erection of the additions in later years. It must abate the nuisance it has created, even if unfortunately it means it can no longer operate its plant."

The evidence clearly shows operation of defendant's plant results in many disturbing noises to those in close proximity like plaintiffs and that some cement dust when blown to the bin necessarily escapes. Under the record the trial court's order granting the injunction must be approved.

VI. In its motion for new trial defendant raised the question of sufficient evidence to support the trial court's allowance of damages. The trial court allowed $1530 for diminution of reasonable rental value of plaintiffs' property and $3800 for special damages. In a case of continuing nuisance, subject to abatement, the measure of damages is diminution in rental value of property caused by nuisance, plus any special damages. Kellerhals v. Kallenberger and Schlotfelt v. Vinton Farmers' Supply Co., both supra.

The trial court's finding there was diminution of the reasonable rental value of plaintiffs' property of $30 per month is amply supported by the evidence. The trial court's finding this loss extended over a period of 51 months is not supported by the record. Operation of defendant's plant commenced in June 1962. This case was tried and submitted to the court in January 1966. The evidence does not extend beyond January 1966. Thus the record covers a period of 43 months. The trial court apparently allowed this loss to the time the findings and conclusions were filed. Allowance for more than 43 months is not supported by the record before us. In other words the trial court's allowance for loss of rental value is excessive to the extent of $240.

Our reading of the trial court's findings and conclusions leads us to conclude a 51-month rather than a 43-month period was considered in the allowance of special damages. Apparently the allowance for special damages was for approximately $75 per month. We believe allowance of special damages is excessive to the extent of $600.

One of the grounds for allowing a new trial is that the amount allowed is lacking in evidentiary support. Miller v. Town of Ankeny, 253 Iowa 1055, 1063, 114 N.W.2d 910, 915; Beyer v. City of Dubuque, 258 Iowa 476, 489, 139 N.W.2d 428, 436, and citations.

We hold defendant is entitled to a new trial on the issue of damages unless plaintiffs file a remittitur of $840 within 30 days from the filing of this opinion. If such remittitur is so filed this case shall stand affirmed. If not so filed the case is remanded only upon the issue of the amount of damages to be awarded. Feldhahn v. Van DeVenter, 253 Iowa 1194, 1197,

115 N.W.2d 862, 864, and citations; Barry v. State Surety Co., 261 Iowa 222, 154 N.W.2d 97.

 VII. Following entry of judgment defendant asked for a stay of the enforcement of the injunction. The trial court, apparently acting under rule 246, Rules of Civil Procedure, stayed imposition of the injunction on condition defendant be assessed an additional $25 per day for operation of the plant. Later this court granted a stay order during this appeal.

The record does not disclose any judgment entered for any days defendant may have operated its plant while the $25 per day order was in effect. So far as the record discloses defendant may not have operated its plant at anytime during this period.

Without a final judgment or order permitting an appeal from interlocutory order defendant's assigned error regarding the order above referred to is not properly before us. Rules 331, 332, R.C.P. Defendant's complaint against this order is not properly before us.

The judgment of the trial court is affirmed on the condition stated in Division VI.

Costs on appeal are taxed one fourth to plaintiffs and three fourths to defendant, The Quality Ready-Mix Co.

Affirmed on condition.

All JUSTICES concur.