Clark HELMKAMP et al., Appellants,

v.

CLARK READY MIX COMPANY,
Appellee.

No. 56112.

Supreme Court of Iowa.

Jan. 16, 1974.

Rehearing Denied Feb. 14, 1974.

Edward S. White, Carroll, for appellants.

Minnich & Neu, Carroll, for appellee.

Heard before MOORE, C. J., and MASON, REES, UHLENHOPP and HARRIS, JJ.

UHLENHOPP, Justice.

The question in this appeal is whether we should enjoin as a nuisance the operation of the cement ready-mix plant of defendant Clark Ready Mix Company in Carroll County, Iowa. We hear

the appeal de novo. We give weight to the trial court's fact findings but are not bound by them. Schlotfelt v. Vinton Farmers' Supply Co., 252 Iowa 1102, 109 N.W.2d 695.

United States Highway 71, which carries substantial traffic, runs north and south along the west side of Carroll, Iowa. In 1959, owners of land in the northwest part of Carroll platted Thomas Addition on the east side of the highway. Residential restrictions apply in the addition, except for two lots adjoining the highway which are zoned commercial. At time of trial in October 1972, the respective plaintiffs had owned and lived in homes in the addition for periods ranging from three to nine years. The homes vary in value for tax purposes from $17,000 to $32,000.

In 1970 defendant bought a parcel of land on the west side of the highway across from Thomas Addition. In 1971 defendant operated a pug mill there and later a portable cement plant, but discontinued those operations. In 1972 it built and began operating a cement ready-mix plant with a silo, bins for storing sand, gravel, and crushed limestone, a diesel-powered front-end loader to transport this aggregate, and driveways for trucks. The house of plaintiffs Rose is 372 feet from the plant. The other houses are at varying greater distances. A supermarket occupies part of the space between plaintiffs' houses and the cement plant, and part of the space is open.

Tank trucks deliver portland cement to the plant. Air compressors on the trucks blow the cement through six-inch pipes into two elevated compartments in the silo. The silo has a vent for the escape of the air. Since the air and cement come into the compartments under pressure, the pressure must be dissipated in some way or cement would blow out through the vent. This is done by a Thurman bag filter consisting of a series of 16 vibrating canvas bags through which the air passes. The theory is that practically all of the cement dust

will be caught in the bags. In practice however, considerable dust escapes through the vent into the atmosphere. When the wind is in the west, the dust blows onto plaintiffs' properties, lighting on their lawns and plantings, outdoor furniture, and clothes lines. It also penetrates their houses and gathers on sills, furniture, carpets, and drapes.

Other trucks bring aggregate to the site and dump it. The diesel loader, with throttle advanced, drives its scoop into the aggregate, which it then transports to a conveyer that elevates the aggregate into a hopper in the plant proper. The "bucking" of the loader into the piles of aggregate is very noisy from the engine itself and from the scraping scoop, and the diesel engine emits smoke. A witness testified, "This front-end loader backs up and goes ahead, runs into a pile of rock and sand and they goose it a few times and it makes it snort, shift gears and backs up and goes ahead, dumps it; backs up, goes into the pile." The dumping of aggregate also creates noise, and the movement of trucks raises additional dust.

Residue concrete which hardens in the ready-mix trucks must be removed. Employees use jackhammers and chipping hammers to do this, creating very loud noises which disturb plaintiffs. Frequently this is done early in the morning and in the evening. Although perhaps not as severe or as frequent, the annoyances suffered by plaintiffs here are generally the same as in Bates v. Quality Ready-Mix Co., 261 Iowa 696, 154 N.W.2d 852.

The trial court enjoined defendant from bringing on the premises and from operating an asphaltic or portland cement plant such as defendant previously had, but dismissed plaintiffs' request for injunction as to the present ready-mix plant. The court intimated that it would have granted damages to plaintiffs had they asked therefor —from which we infer that the court thought a nuisance existed but not one

which warranted an injunction. Plaintiffs appealed.

The appeal presents two questions. Does a nuisance exist? If so, should we enjoin operation of the plant?

I. *A Nuisance?* Prior to defendant's operation of this plant, plaintiffs had enjoyable and relatively quiet homes. The dust and noise, and to a lesser extent the smell from the diesel loader, have substantially changed the neighborhood for the worse.

The principal recent decisions on nuisance are Riter v. Keokuk Electro-Metals Co., 248 Iowa 710, 82 N.W.2d 151; Kellerhals v. Kallenberger, 251 Iowa 974, 103 N. W.2d 691; Schlotfelt v. Vinton Farmers' Supply Co., 252 Iowa 1102, 109 N.W.2d 695; Bates v. Quality Ready-Mix Co., 261 Iowa 696, 154 N.W.2d 852; Claude v. Weaver Constr. Co., 261 Iowa 1225, 158 N.W.2d 139; Patz v. Farmegg Products, Inc., 196 N.W.2d 557 (Iowa); Kriener v. Turkey Valley Community School Dist., 212 N.W.2d 526 (Iowa); Larsen v. McDonald, 212 N.W.2d 505 (Iowa). See also Restatement, Torts 2d, Tentative Draft No. 16, §§ 821D, 821F, 822, Tentative Draft No. 17, §§ 827, 828, Tentative Draft No. 18, §§ 822, 826, 829A; Annot. 24 A.L. R.2d 194, 210 (cement plants).

■ The applicable principles in cases of this kind are fully considered in Riter v. Keokuk Electro-Metals Co., supra. Although our statute does not abrogate the common law on nuisance, the starting point is this portion of § 657.1, Code 1973: "Whatever is . . . offensive to the senses . . . so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance. . . ." Section 657.2(1) is pertinent in declaring as a nuisance "[t]he erecting, continuing, or using any building or other place for the exercise of any trade, employment, or manufacture, which, by occasioning noxious exhalations, offensive smells, or other annoyances, becomes injurious and dangerous to the health, comfort, or property of individuals or the public." This court stated in Bates v. Quality Ready-Mix Co., 261 Iowa at 703–704, 154 N.W.2d at 857:

The above statutory enumerations do not modify the common-law application to nuisances. The term "private nuisance" refers to an actionable interference with a person's interest in the private use and enjoyment of his land . . . . One must use his own property so that his neighbor's comfortable and reasonable use and enjoyment of his estate will not be unreasonably interfered with or disturbed . . . . Noises may be of such a character and intensity as to so unreasonably interfere with the comfort and enjoyment of private property as to constitute a nuisance, and, in such cases, injury to health of the complaining party need not be shown . . . . A fair test of whether the operation of a lawful trade or industry constitutes a nuisance has been said to be the reasonableness of conducting it in the manner, at the place and under the circumstances in question . . . . Thus the question whether a nuisance has been created and maintained is ordinarily one of fact, and not of law, depending on all the attending or surrounding circumstances.

■ In determining whether a nuisance exists, we consider priority of location, the nature of the neighborhood, and the wrong complained of. Larsen v. McDonald, 212 N.W.2d 505 (Iowa). As to the first of these factors—"who was there first"—the court has said, "Priority of occupation is a circumstance of considerable weight. . . ." Schlotfelt v. Vinton Farmers' Supply Co., 252 Iowa 1102, 1109, 109 N.W. 2d 695, 699. See also Kriener v. Turkey Valley Community School Dist., 212 N.W. 2d 526 (Iowa).

■ After considering the evidence in the light of these principles, we hold that a nuisance exists.

II. *Relief.* When the tort of nuisance is proved, an essential second step must be

taken: fashioning appropriate relief. Plaintiffs asked for an injunction to prohibit operation of the ready-mix plant; they did not seek damages. The trial court refused the injunction asked. Plaintiffs insist injunction is the appropriate relief here.

■ Three possibilities exist. On the one hand, we can hold that damages are appropriate and turn plaintiffs out of court in this suit. On the other hand, we can hold that injunction is appropriate and prohibit operation of the plant. Between these alternatives, we can grant an injunction relating to the manner of operating the plant or remand with permission for plaintiffs to amend to ask damages as was done in Riter v. Keokuk Electro-Metals Co., 248 Iowa 710, 82 N.W.2d 151.

■ The court has stated, "[T]o justify the abatement of a claimed nuisance the annoyance must be such as would cause physical discomfort or injury to a person of ordinary sensibilities." Schlotfelt v. Vinton Farmers' Supply Co., 252 Iowa at 1108, 109 N.W.2d at 698. We are satisfied this nuisance meets that test. But several other factors must be weighed. The American Law Institute enumerates the main factors in Restatement, Torts 2d, Tentative Draft No. 19, § 936(1):

The appropriateness of injunction against tort depends on a comparative appraisal of all of the factors in the case, including the following primary factors:

(a) the character of the interest to be protected,

(b) the relative adequacy to the plaintiff of injunction and of other remedies,

(c) plaintiff's delay in bringing suit,

(d) plaintiff's misconduct,

(e) the relative hardship likely to result to defendant if injunction is granted and to plaintiff if it is denied,

(f) the interests of third persons and of the public, and

(g) the practicability of framing and enforcing the order or judgment.

■ In a given case in which a nuisance is shown, the determination of whether injunction shall be granted or the objectors shall be relegated to damages is ultimately a judgment call. Upon consideration of the evidence here and the various factors which we have quoted, we believe that plaintiffs should be granted the injunction they seek.

■ True, defendant bought unzoned land outside the city, but that land is just outside the city and near the residential area in question. Plaintiffs are not seeking relief for a zoning violation but for nuisance. The harm caused by the plant is as great from an actual standpoint as though defendant were operating at the same distance but within the political boundaries of the city. Defendant knew, when it bought the land and erected the plant, of the proximity of the homes. Defendant cannot successfully stand on the fact that it is outside the city and say it may therefore operate without regard to the nearby dwellings which were there first. Cf. Bates v. Quality Ready-Mix Co., 261 Iowa 696, 154 N.W.2d 852 (both dwelling and ready-mix plant outside of city); Jefferson Lumber & Concrete Products, Inc. v. Jimco, Inc., 217 So.2d 721 (La. App.); Muskegon Trust Co. v. Bousma, 247 Mich. 98, 225 N.W. 611. Plaintiffs acted promptly and are not guilty of laches.

We return the case to district court with directions to let a writ of injunction issue prohibiting operation of the plant, in addition to the injunction previously granted.

Reversed and remanded with directions.