Debra L. **PERKINS**, Richard L. **Wise**, Linda R. **Wise**, Donald **Haines**, Paul R. **Blythe**, and Lori R. **Blythe**, Appellees,

v.

**MADISON COUNTY LIVESTOCK & FAIR ASSOCIATION, Appellant.**

No. 98–939.

Supreme Court of Iowa.

July 6, 2000.

James L. Sayre of James L. Sayre, P.C., Des Moines, and Thomas G. Crabb, Des Moines, for appellant.

G. Stephen Walters of Jordan, Oliver & Walters, P.C., Winterset, for appellees.

TERNUS, Justice.

The appellees, Debra Perkins, Richard Wise, Linda Wise, Donald Haines, Paul Blythe and Lori Blythe, own property near the fairgrounds in Madison County. The appellant, Madison County Livestock and Fair Association ("the Association"), owns and manages the fairgrounds property. In 1996, the Association constructed a racetrack at the fairgrounds and began holding figure-eight races there. The appellees, whom we shall refer to collectively as the plaintiffs, brought this suit seeking to have the racetrack removed or to permanently enjoin figure-eight racing at the fairgrounds. The district court held that the races were not a nuisance, but concluded that the Association had violated the Madison County Zoning Ordinance by not obtaining the necessary permit and vari-

ance for construction of the racetrack. Accordingly, the court denied an award of damages to the plaintiffs, but enjoined the Association from holding figure-eight races at the fairgrounds until it had obtained a special use permit and variance from the local zoning board.

The Association appealed the trial court's issuance of an injunction. The plaintiffs filed a cross-appeal, contending that the court erred in holding that the races did not constitute a nuisance. On our de novo review, we agree with the district court that the Association violated the county zoning ordinance when it constructed the racetrack in violation of the requirements of that ordinance. We also find, however, that the figure-eight races constitute a nuisance as to plaintiff Perkins, whose home lies in closest proximity to the track. We agree with the district court that the races are not a nuisance as to the other plaintiffs.

In view of our findings and conclusions, we affirm the trial court's judgment insofar as it enjoins the Association from holding any figure-eight races until it has obtained the necessary permits and variances and has otherwise complied with the county zoning ordinance. We also affirm the trial court's dismissal of the nuisance claims of plaintiffs Wise, Haines, and Blythe. We reverse the trial court's dismissal of plaintiff Perkins' nuisance claim and remand for a determination of the appropriate remedy.

I. *Scope of Review.*

 This case was brought and tried as an equity action. Therefore, on appeal, this court will review the case de novo. *See* Iowa R.App. P. 4 ("Review in equity cases shall be de novo."); *Weinhold v. Wolff*, 555 N.W.2d 454, 458 (Iowa 1996). We give weight to the district court's find-ings of fact, but we are not bound by these findings. *See Weinhold*, 555 N.W.2d at 458. "[W]e are especially deferential to the district court's assessment of witness credibility." *Id.*

II. *Factual and Procedural Background.*

The Madison County fairgrounds are located just outside the city limits of Winter-set. The fairgrounds were established in 1948 and occupy thirty-two acres of land. At all times, the fairgrounds have been under the control of the Madison County Livestock and Fair Association, an agricultural society formed pursuant to Iowa Code chapters 174 and 504A (1995).[1]

A. *Zoning requests and construction of track.* Prior to the events giving rise to the present lawsuit, the fairgrounds had an arena that was used primarily for rodeo events. In addition, at times between 1962 and 1993, the arena had been the site for various motorized events, including tractor pulling contests, demolition derbies, an auto thrill show, pickup pulls, garden tractor pulls, three and four wheeler races, and motorcycle moto-cross races. Most of these events took place during the week of the county fair.

In 1993, the Association filed an application with the Madison County Zoning Board of Adjustment requesting a special use permit and variance to allow the Association to construct a multi-purpose track and arena on the fairgrounds property. The proposed new track and arena would expand the old arena to a quarter-mile track for stock car racing.

The portion of the fairgrounds on which the proposed racetrack was to be located was zoned agricultural, a designation that did not allow a racetrack as a permitted use. Go-cart tracks were, however, permitted as a special use in an agricultural

---

1. An agricultural society is incorporated "for the purpose of holding [a] fair, and ... owns or leases at least ten acres of ground and owns buildings and improvements situated on said ground...." Iowa Code § 174.1(3). The society, in addition to being authorized to hold a fair, may also exercise any powers enumerated in its articles of incorporation both before and after holding the fair. *See id.* § 174.2.

district, subject to certain requirements. Of particular importance to this case, the ordinance required a 200-foot setback from any property line and a 600-foot setback from existing dwellings. It also required that any track have an asphalt or oiled surface. The Association requested a variance that would permit it (1) to build the track 100 feet from the back property line and 245 feet from an existing dwelling, and (2) to build a dirt track that would not be treated with oil or paved.

The zoning board voted to grant a special use permit to allow construction of the proposed racetrack, but denied a variance from the special requirements imposed by the ordinance until the Association provided additional information. The Association then filed an amended request for a special use permit and a variance, stating that it was not possible to comply with the setback requirements. The request also stated that an oiled or asphalt surface on the track would not permit the multiple uses envisioned by the Association. The board held a public hearing at which the plaintiffs appeared and voiced their strong opposition to the proposed racetrack. The zoning board again declined to allow any variance from the requirements of the zoning ordinance. The Association then asked that its request for a special use permit and variance be "continued"; the board granted the requested continuance.

Despite its lack of success before the zoning board, the Association, claiming that it was not subject to the county zoning ordinances, proceeded to construct a new arena and track for the purpose of conducting figure-eight auto races. The new racetrack, completed in 1996, expanded the arena 91 feet further south, 105 feet further east, and 62 feet further north than the old arena. What was a flat arena became an oval track with banked sides. Spectator seating, lighting and the announcer's booth were also updated and enlarged. The track is within 243 feet of the Perkins residence and it has never

been treated with oil or paved with asphalt to reduce dust.

B. *Commencement of racing.* The Association began holding figure-eight racing in 1996 at the new track. Two events were held that year, both at night: one during the county fair and one in September. During 1997, seven figure-eight races were held: two during fair week and the rest between April and September. The races normally began at 6:30 p.m. and lasted until 11:00 p.m., although the racers themselves started to arrive at 3:00 p.m. and were not all gone until midnight. Attendance ranged from 750 to 1500 people. The Association does not dispute that "on a day when the races are held, the activity before, during and after the races generates noise, principally the roar of engines, some dust and exhaust fumes."

C. *This lawsuit.* The plaintiffs are property owners who reside adjacent to or in relatively close proximity to the fairgrounds. They brought this action claiming that the Association violated the Madison County Zoning Ordinance in constructing the racetrack, and created a nuisance by conducting figure-eight races. The plaintiffs asked the court to issue a mandatory injunction requiring the Association to remove the racetrack, enter a permanent injunction prohibiting figure-eight races at the track, and award a judgment for damages and costs. The Association, in response, contended that the county zoning ordinance did not apply, that the Association had priority of use, that the plaintiffs had notice of the use, and that the granting of an injunction would be contrary to public policy.

The case proceeded to a bench trial, which included an extensive stipulation of facts by the parties. The trial court ruled that the county zoning ordinance applied to the Association, and that the ordinance did not allow a racetrack in an agricultural district. The court found that the Association had not obtained any special permit or variance that would allow construction of the track or the sponsoring of auto races.

The court rejected the Association's argument that the racetrack constituted the continuation of a prior nonconforming use.

The trial court also considered whether the Association's use of the racetrack qualified as a nuisance, considering (1) priority of location, (2) the nature of the neighborhood, and (3) the wrong complained of. The court held that the first two factors weighed in favor of the plaintiffs. The court concluded, however, that the plaintiffs had failed to establish that the wrong of which they complained was unreasonable. More specifically, the trial court held that the racetrack's interference with the plaintiffs' use and enjoyment of their property was not sufficiently continuous to qualify as a nuisance.

The court entered its judgment, enjoining the Association from conducting any figure-eight races until it had complied with the zoning ordinance, and denying any damages to the plaintiffs. The case is now before this court on the Association's appeal and the plaintiffs' cross-appeal.

### III. Issues on Appeal.

The Association raises two issues in its appeal: (1) does the county zoning ordinance apply to the fairgrounds; and (2) did the Association violate the zoning ordinance? The errors claimed by the plaintiffs in their cross-appeal are that (1) the trial court erred in failing to find a nuisance, (2) the trial court erred in failing to order removal of the track, or alternatively in failing to enjoin any racing at the track, and (3) the trial court erred in failing to award damages.

### IV. Zoning Ordinance.

A. *Does the zoning ordinance apply?* The Association claims that Iowa Code section 174.3 exempts it from the county zoning ordinances. This statute provides:

During the time a fair is being held, no ordinance or resolution of any city shall in any way impair the authority of the society, but it shall have sole and exclusive control over and management of such fair.

The parties agree that the Association is a "society" as that word is defined in chapter 174. *See* Iowa Code § 174.1 (defining "society," in part, as "a county or district fair or agricultural society"). The disputed question is whether the statutory exemption set forth in section 174.3 encompasses the county zoning ordinances that plaintiffs seek to apply to the Association's racetrack and figure-eight races.

Well-settled principles of statutory construction guide our analysis. The ultimate goal of statutory construction is to give effect to the legislature's intent. *See State v. Casey's Gen. Stores, Inc.,* 587 N.W.2d 599, 601 (Iowa 1998). "To ascertain legislative intent, we look to what the legislature said. We do not speculate as to the probable legislative intent apart from the words used in the statute." *State v. Adams,* 554 N.W.2d 686, 689 (Iowa 1996) (citation omitted).

When we focus on the words used by the legislature, we readily conclude that section 174.3 does not apply. The legislature provided in that statute that "no ordinance or resolution of any *city* " could impair the Association's authority over the fair. Iowa Code § 174.3 (emphasis added). The ordinance at issue here is a *county* zoning ordinance. The word "city" has been defined by the legislature to mean "a municipal corporation, but *not including a county,* township, school district, or any special district or authority." *Id.* § 362.2 (emphasis added). Thus, a *county* ordinance is not the same as a *city* ordinance and, accordingly, section 174.3 does not apply.[2]

B. *Did the Association violate the Madison County Zoning Ordinance?* Having determined that the county's zon-

---

2. We note that the legislature amended section 174.3 in 1999 to make it applicable to county ordinances and resolutions as well as city ordinances and resolutions. *See* 1999 Iowa Acts ch. 204, § 29 (codified at Iowa Code § 174.3 (Supp.1999)).

ing ordinance applies to the Association's use of the fairgrounds, we now turn to the question of whether the Association's construction of the racetrack violated the ordinance. It cannot be disputed that the location of the racetrack in an agricultural district less than 100 feet from the back property line and within 243 feet of the nearest dwelling violates the Madison County Zoning Ordinance. The Association argues, however, that the arena constituted a prior nonconforming use and the 1996 expansion was, therefore, also exempt from the requirements of the zoning ordinance as a prior nonconforming use. The trial court rejected this contention and so do we.

A non-conforming use is one " 'that existed and was lawful when the [zoning] restriction became effective and which has continued to exist since that time.' " *Board of Supervisors v. Miller*, 170 N.W.2d 358, 360 (Iowa 1969) (quoting 8A Eugene McQuillen, *Municipal Corporations* § 25.185, at 21 (rev.vol.1965)). The Madison County Zoning Ordinance defines a nonconforming use as:

Any building or land lawfully occupied by a use at the time of passage of this Zoning Ordinance (or any amendment thereto) which does not conform after the passage of the Zoning Ordinance (or amendment thereto) with the use regulations of the district in which it is situated.

Madison County Zoning Ordinance § 4(45).

There does not appear to be a serious dispute that the old arena constituted a permitted nonconforming use. The original rodeo arena located on the fairgrounds was built in the early 1960's. In 1966, the county adopted a zoning ordinance that designated the area in question as agricultural. An agricultural district did not include arenas or racetracks as permitted uses. The ordinance did, however, as previously noted, permit existing nonconforming uses. Because the arena was in existence when the zoning ordinance was passed the original arena qualified as a nonconforming use. The real issue of contention is whether the current racetrack and its use is the same as the prior, permissible nonconforming use.

A property owner may lose the protection of a nonconforming-use status when the property owner exceeds the established nonconforming use. *See City of Jewell Junction v. Cunningham*, 439 N.W.2d 183, 186 (Iowa 1989). Thus, "[e]nlargements or extensions of non-conforming uses are not allowed." *Stan Moore Motors, Inc. v. Polk County Bd. of Adjustment*, 209 N.W.2d 50, 52 (Iowa 1973). This court has explained the rationale underlying this principle as follows:

The prohibition against expanding or enlarging a non-conforming use defends against the growth of a pre-existing aggravation. That pre-existing aggravation, the non-conforming use, survives as a matter of grace. The public is not required to expand upon that grace to its increasing aggravation.

*Id.* at 53. Landowners are given some latitude, however, and may change the original nonconforming use "if the changes are not substantial and do not impact adversely on the neighborhood." *City of Jewell Junction*, 439 N.W.2d at 186. Thus, we must examine the nature and extent of the changes to the rodeo arena and their effect on the surrounding area.

We agree with the trial court that the enlarged racetrack and the figure-eight racing for which it is used are substantially different from the rodeo-type arena and the events held in it. Several facts support this conclusion. The current racetrack is significantly larger than and different in character and form from the rodeo arena. In addition, the evidence at trial showed that the figure-eight races have had a much different effect on the neighborhood than did the rodeos, tractor pulls and demolition derbies conducted in the old arena. The prior events did not cause the same degree of noise, dust, and

fumes as have the auto races. Additionally, the figure-eight races have occurred more frequently and have lasted longer than the prior events. Moreover, because the new track is much larger than the rodeo arena, resulting in the track's closer proximity to neighboring properties, these adverse effects have been intensified.

In summary, the rodeo arena was substantially changed when it was enlarged and reconstructed to its current figure-eight racetrack configuration. In addition, the impact of the auto races on the surrounding neighborhood has been significantly different from the uses to which the prior arena was put. We conclude, therefore, as did the trial court, that the construction of the racetrack and its use for figure-eight racing has caused the Association to lose the protection of the nonconforming use provisions of the ordinance. As a result, it was necessary for the Association to comply with the restrictions imposed on agriculturally-zoned property, which it did not do. Accordingly, we agree with the trial court's ruling that the Association is in violation of the Madison County Zoning Ordinance.

### V. Are the Figure–Eight Races a Nuisance?

A. *Applicable legal principles.* The legislature has defined a "nuisance" in Iowa Code chapter 657:

> Whatever is injurious to health, indecent, or unreasonably offensive to the senses, or an obstruction to the free use of property, so as essentially to unreasonably interfere with the comfortable enjoyment of life or property, is a nuisance, and a civil action by ordinary proceedings may be brought to enjoin and abate the same and to recover damages sustained on account thereof.

Iowa Code § 657.1. This statute is supplemented by common law principles governing private nuisances:

> A private nuisance is "an actionable interference with a person's interest in the private use and enjoyment of the person's land." Parties must use their own property in such a manner that they will not unreasonably interfere with or disturb their neighbor's reasonable use and enjoyment of the neighbor's property.

> Whether a lawful business is a nuisance depends on the reasonableness of conducting the business in the manner, at the place, and under the circumstances in question. Thus the existence of a nuisance does not depend on the intention of the party who created it. Rather, it depends on the following three factors: priority of location, the nature of the neighborhood, and the wrong complained of.

*Weinhold*, 555 N.W.2d at 459 (quoting *Bates v. Quality Ready–Mix Co.*, 261 Iowa 696, 703, 154 N.W.2d 852, 857 (1967)) (citations omitted).

In determining whether a property owner's use of his land is a nuisance, we use an objective, normal-person standard. *See id.*; *Patz v. Farmegg Prods., Inc.*, 196 N.W.2d 557, 561 (Iowa 1972). Thus, if " 'normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable,' " then the invasion is significant enough to constitute a nuisance. *Weinhold*, 555 N.W.2d at 459 (quoting Restatement (Second) of Torts § 821F, cmt. *d*, at 106 (1977)).

B. *Priority of location.* The Association argues that the trial court was wrong in concluding that the plaintiffs had priority of location, because the fairgrounds was established prior to any of the plaintiffs purchasing their property. This contention gives rise to the following question: Does priority of location refer only to actual presence on the property, or does it specifically refer to priority with respect to the alleged nuisance? We think this factor envisions an examination of whether the complaining party moved to the *nuisance*. In those circumstances, a plaintiff has little basis to complain about

conditions he elected to encounter by moving to a location where the nuisance already existed. *See Schlotfelt v. Vinton Farmers' Supply Co.,* 252 Iowa 1102, 1109, 109 N.W.2d 695, 699 (1961) ("one has a considerably greater right to protest against the conduct of a business in a residential area where the objector has established his home with no knowledge that such an invasion is contemplated or may be attempted in the future"); *Higgins v. Decorah Produce Co.,* 214 Iowa 276, 282, 242 N.W. 109, 112 (1932) (holding that complainant, who acquired property adjacent to a poultry plant that was subsequently enlarged to an extent that increased the offensive odors and noise, was not estopped from maintaining a nuisance action). *But see* 58 Am.Jur.2d *Nuisances* § 440, at 1013–15 (1989) (stating that even a plaintiff who purchased his property after establishment of the nuisance is not automatically barred from recovering damages, although that fact is "a circumstance of considerable weight"). Thus, we examine who had priority of location in reference to the challenged activity.

When viewed from this perspective, we think the trial court was clearly correct. Although not all of the plaintiffs had purchased their land prior to establishment of the fairgrounds in 1948, all the plaintiffs had moved onto their land prior to construction of the racetrack and commencement of the figure-eight races. It is this use that gives rise to the plaintiffs' nuisance claim, not the operation of a fair or related fairgrounds activity. While the Association argues that its current use of the racetrack is not significantly different from its prior usage of the rodeo arena, we have already rejected this contention.

In summary, the use of the fairgrounds that is claimed to constitute a nuisance did not begin until after the plaintiffs were already on their properties. Therefore, the plaintiffs have priority of location, a fact that "weigh[s] heavily" in favor of the plaintiffs on the nuisance issue. *Weinhold,* 555 N.W.2d at 460; *accord Bates,* 261 Iowa at 704, 154 N.W.2d at 858 ("Priority of occupation is a circumstance of considerable weight....").

C. *Nature of the neighborhood.* The trial court also held that this factor—the nature of the neighborhood—supported the plaintiffs' claim that the racetrack and figure-eight races are a nuisance. The Association challenges this finding with an argument similar to those made in connection with the nonconforming-use issue and priority-of-location issue. The Association claims that the "neighborhood" is the Madison County fairgrounds, and there were motorized racing events at the fairgrounds for many years prior to construction of the new racetrack.

The fairgrounds and the area surrounding it are zoned residential and agricultural. There was no evidence that business, commercial, or industrial uses are present in this general locale. The record does show that many residences are located in close proximity to the fairgrounds. It is also noteworthy that, with the exception of go-cart tracks, no form of racing is authorized by the local zoning ordinance in either residential or agricultural districts.

We think that the plaintiffs could legitimately expect that their residences would be subject to the normal uses permitted in residential and agricultural areas, but not to uses that are not authorized in those districts, even by special permit. Thus, the character of the neighborhood is not one in which figure-eight racetracks would typically be found. Consequently, this factor weighs in favor of the plaintiffs.

D. *Significance of interference.* In reference to this factor, the trial court noted that, although the races cause annoyance and inconvenience to the plaintiffs, the races only occur seven times a year. Under these circumstances, the court found that "the [p]laintiffs [had] not been prevented from normal use and enjoyment of their property for any significant percentage of the time." The court concluded, therefore, that "the seven time

invasion" did not rise to the level of a nuisance. Upon our de novo review of the record, we agree with the trial court's findings and conclusions as they relate to the Wise, Haines, and Blythe plaintiffs. We disagree, however, with the court's conclusion that the races are not a nuisance as to plaintiff Perkins.

It is helpful at this stage of our analysis to briefly refer to the factual claims of each plaintiff with respect to the interference and annoyance caused to them by the figure-eight races. We examine each plaintiff's claim independently of the other plaintiffs' claims so that a plaintiff's claim will succeed or fail on the basis of that plaintiff's particular circumstances.

 1. *Richard and Linda Wise*. The Wises' land adjoins the fairgrounds on the northeast border of the fairgrounds property. (The racetrack is located on the southwest corner of the fairgrounds.) The Wises' home is approximately 975 feet from the track.

The Wises testified that during the races they cannot use their backyard or the family room (which is in the back of their house closest to the racetrack) due to the noise coming from the track. Fumes from the races also find their way into the house and stay for two to three hours. The windows in an old building located on their property rattle from the noise. The Wises also complain of the traffic going by on Summit Street in front of their property as vehicles enter and exit the fairgrounds. (The fairgrounds main, and generally only, entrance and exit are located on Summit Street.)

In considering this evidence, we attach little significance to the windows rattling in the outbuilding because that disturbance does not appreciably interfere with the Wises' use and enjoyment of their property. We also give little weight to the annoyance caused by the traffic on the adjoining street. Heavy traffic is to be expected when an event is held at the fairgrounds, and there is nothing significantly different, in our view, of the traffic during the races from the traffic present during the fair. As for the Wises' remaining complaints, we think that the short-term inconvenience experienced by the Wises caused by the noise and fumes from the races is not "definitely offensive, seriously annoying, or intolerable," when it occurs only seven times a year. Accordingly, we agree with the trial court that they have not established that the racetrack and races are a nuisance with respect to the use and enjoyment of their property.

 2. *Donald Haines*. The Haines property is adjacent to the Wise property. Haines' home is 1050 feet from the track. Haines testified that the noise from the track rattles the windows in his house, shifts the ceiling tiles, and requires that the television volume be turned up a "very little." Dust from the track accumulates on the deck furniture and on one occasion Haines smelled fumes from the racecars. We find that these temporary disturbances are not significant enough to constitute a nuisance, given the fact that they occur only seven times a year.

 3. *Paul and Lori Blythe*. The Blythes live across Summit Street from the fairgrounds, near the northwest corner of the Association's property. Their home is approximately 1150 feet from the edge of the track, the longest distance of any of the plaintiffs' homes from the racetrack. The Blythes testified that they cannot carry on a normal conversation in their home during the races and must turn up the volume on the television. Their young children cannot play outside during the races and cannot get to sleep at their normal bedtime. Because the Blythes' home is not air conditioned, they have dust and fumes inside their house. Many of their complaints center on the disruption caused by the noise and lights from traffic leaving the races.

As noted previously, we give little weight to any interference caused by the traffic on Summit Street, but rather focus

on the disturbance caused by the races themselves. Although the Blythes experience more annoyance in their home—due to keeping their windows open during the races for cooling and ventilation—we do not think their situation is appreciably different from the Wises' and Haines' positions. We agree with the trial court that, although the races cause personal discomfort, the short and temporary annoyances experienced by the Blythes during the races only seven times a year are not significant enough to constitute a nuisance.

■■■ 4. *Debra Perkins*. Debra Perkins' property adjoins the fairgrounds property on the south. Her home is a mere 243 feet from the track and the edge of her yard is only 77 feet from the track. The pit area of the track is adjacent to her property.

Unlike the other plaintiffs whose complaints are primarily caused by the noise and fumes generated during the races, Perkins and her children experience annoyance and interference from the time the racers begin to arrive at 3:00 p.m. until the last racer leaves about an hour after the end of the last race, which can be as late as midnight. Perkins testified the pit area, located on the property line, is "extremely noisy." Lights, noise, dust, smoke and exhaust fumes emanate from the track and pit area directly onto Perkins' property, including the house. During the races clods of dirt are catapulted from the track onto her property, although the Association has taken steps to minimize this occurrence by erecting a screen at the track. Even between the individual races, there is noise coming from the pit area as racers rev up their motors and prepare for the next race, making the disturbance on the Perkins property constant.

The noise inside the house is so loud that the Perkins family has to turn the volume up considerably on the television to watch a program and then they cannot hear the phone ring. They cannot talk in a normal tone of voice and find themselves literally yelling to communicate. Fumes enter the house and are irritating to breathe and generally unpleasant. Perkins' children cannot play in the yard and cannot go to sleep at their regular bedtime.

■■■ The trial court concluded that these circumstances did not constitute a nuisance because they only occurred seven times a year. While it is certainly important to consider the frequency and duration of the harmful conditions when determining whether they are "definitely offensive," "seriously annoying," or "intolerable," these factors are not dispositive:

The fact that an injury from an alleged nuisance is only occasional, or that the annoyance exists during part of the time only, does not prevent the act or thing causing it from being a nuisance, although such fact is to be considered with all the evidence in the case.

58 Am.Jur.2d *Nuisances* § 96, at 746 (1989).

Here, the interference caused by the figure-eight races with Perkins' use and enjoyment of her property and home is intense and severe. The races are almost literally located in her backyard. We think a normal person would find the situation to be definitely offensive at the least. Under these circumstances, we find that the races are a nuisance, despite the fact that they take place only seven times a year. Accordingly, we reverse the district court's adverse ruling on plaintiff Perkins' nuisance claim.

## VI. *Summary and Disposition.*

We agree with the district court's determination that the Association violated the Madison County Zoning Ordinance by constructing the racetrack and holding figure-eight races. Therefore, we affirm the court's issuance of an injunction, enjoining the Association from conducting any further races until it has completely complied with the zoning ordinance.

We also agree with the district court's ruling that plaintiffs Wise, Haines, and Blythe failed to establish that the races unreasonably interfered with the use and enjoyment of their property so as to constitute a nuisance. Accordingly, we affirm the district court's dismissal of their claims.

We disagree with the district court's finding that plaintiff Perkins failed to prove that the races were a nuisance, and hold that she has established that the figure-eight races unreasonably interfered with the use and enjoyment of her property. Therefore, we reverse the court's dismissal of her nuisance claim and remand this case to the district court for a determination, on the record already made, of the proper remedy to which Perkins is entitled.

**AFFIRMED ON APPEAL; AFFIRMED ON CROSS–APPEAL OF PLAINTIFFS WISE, HAINES, AND BLYTHE; REVERSED ON CROSS–APPEAL OF PLAINTIFF PERKINS AND REMANDED FOR FURTHER PROCEEDINGS.**

All justices concur except LAVORATO and LARSON, JJ., who take no part.