**IN THE COURT OF APPEALS OF IOWA**

No. 18-0170
Filed December 5, 2018

**LAVON M. BROCKMAN,**
       Plaintiff-Appellant,

**vs.**

**GLEN R. RUBY and LORI A. RUBY,**
       Defendants-Appellees.
_____

       Appeal from the Iowa District Court for Pottawattamie County, Kathleen A.

Kilnoski, Judge.

       LaVon Brockman appeals the dismissal of her equitable action to abate a

private nuisance and establish a drainage easement.  **AFFIRMED.**

       Lloyd R. Bergantzel, Council Bluffs, for appellant.

       Bradford L. Davis, Council Bluffs, for appellees.

       Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

LaVon Brockman appeals the dismissal of her equitable action to abate a private nuisance and establish a drainage easement. She contends the district court erred in concluding a circumstance on adjoining land owned by Glen and Lori Ruby does not amount to a nuisance and the court failed to consider the easement issue. Both parties request an award of appellate attorney fees. The Rubys request an additional award of expert-witness fees incurred in the district court proceedings.

## I.     Background Facts and Proceedings

Upon our de novo review of the record, we make the following factual findings. This case involves a dispute between Brockman and her neighbors to the east, the Rubys. In 1973, Brockman and her husband[1] purchased the property on which Brockman now lives.[2] In 2000, the Brockmans purchased an additional adjoining tract of land that was owned by Mr. Pursell. When the Brockmans purchased land from Pursell in 2000, Pursell also owned the adjoining land that is now owned by the Rubys. The Rubys purchased their current property in 2003.[3]

According to Brockman's testimony, her property contained a four-foot-wide ditch running from her driveway to the east property line, and then the ditch continued onto what is now the Ruby property. Brockman testified that, in 1973, the ditch was fifteen to twenty feet deep in the area by her driveway but was only

---

[1] Mr. Brockman passed away in 2012.
[2] The Brockmans purchased the land on contract. They fulfilled their obligations under the land contract, and the real property was deeded to them in 1996.
[3] The record indicates Pursell sold the property to a Mr. Kubrick sometime between 2000 and 2003, and then the Rubys purchased the property from Mr. Kubrick in 2003.

four or five feet deep in the area near the property line. Brockman testified the dimensions of the ditch remained constant from 1973 until around 2000, when Pursell "changed the driveway" on his property. Pursell apparently filled in a portion of the ditch and built a driveway on top of it. However, this portion of the ditch already contained a drainage culvert. The record is unclear as to whether Pursell made any modifications to the culvert when he installed the new driveway. Brockman testified she did not know if anything was done to the culvert but acknowledged Pursell "would have put in a tube similar to or maybe that same tube that runs under the Rubys' driveway."

Shortly after the Rubys purchased their property in 2003, Brockman and her husband complained about the culvert underneath the Rubys' driveway being too small and causing water to back up on the Brockman property. The Brockmans asked the Rubys to lower the culvert. Mr. Ruby responded that water was flowing through the culvert adequately. Mr. Ruby has never noticed any water backing up on the Brockman property from his culvert. No evidence was presented that the area flowing into or out of the Ruby culvert has ever flooded or overflowed such that it would spill over onto the Brockman property. Over the years, Mr. Brockman and Mr. Ruby engaged in several conversations about the culvert under the Rubys' driveway. Brockman testified that, since Pursell changed the driveway on the east property, the ditch on her property started "filling in." Brockman claims the driveway reconstruction is the cause of her nuisance complaints—that her property is sometimes "wet" and she "cannot mow" because her mower "gets stuck in the mud."

However, Brockman did not mow the "wet" spots on her property in the past because, until at least 1998, those areas were occupied by trees. The Brockmans consented to removal of those trees sometime between 1998 and 2002. Furthermore, the wet spots on Brockman's property are located in the lowest point of the property, and all of the runoff from her property and other higher areas around that property gravitates to the area where the wet spots are located. With that runoff comes silt, which settles into the ditch and low corner of Brockman's property. Brockman has never engaged in measures to maintain the integrity of the ditch on her property, such as clean it out, remove vegetation, or install a tile. The Brockman property includes a natural spring near the complained-of wetland. Sometimes the spring is wet, sometimes it is dry.

Brockman's expert, a general contractor of several years with experience in installing and supervising the installation of culverts, testified to his opinion that the placement of the culvert under the Ruby driveway and the level of the Rubys' connected retention pond causes a backflow of water onto the Brockman property. However, he also testified Brockman's ditch has collected sediment from erosion and that the inflow of sediment from erosion in these "old country ditches" is constant and usual. He also testified to his belief that when Pursell modified the driveway on the east property, he moved the culvert further north, which prevented the sediment from properly flowing from the Brockman ditch. However, historical mapping data indisputably shows that the course of the waterway has not been altered since at least the 1930s.

Mr. Ruby took several videos of the complained-of wetland area. The footage shows water from the Brockman property properly flows through the

culvert under the Ruby driveway, into the adjacent retention pond, and over the spillway on the other side of the pond. The Rubys' expert has bachelor's and master's degrees in civil engineering and specializes in water resources in environmental engineering and hydrology. A 2017 wetland assessment of the Brockman property conducted by the Rubys' expert found the complained-of wet area had an elevation of 1109.8 feet, while the Rubys' retention pond had a lower elevation of 1106.7 feet. Due to the difference in elevation, the expert testified the retention pond could not be the cause of the moist conditions on the Brockman property. Upon his assessment, the expert "determined that the wetland areas on the [Brockman] property are a direct result of the adjacent groundwater spring-fed stream, and that said wetlands have been present on the [Brockman] property dating back to the 1930's." The expert also determined the removal of "several large trees" on the Brockman property, "documented to be more than 70-years old, has significantly reduced the groundwater uptake occurring in th[e] east wetland area, therefore resulting in more groundwater seepage coming to the land surface." The assessment continued, "[I]t can be definitively stated that the east wetland area has a nearly 100-year long documented history of being saturated well prior to the installation of the retention pond and driveway culvert on [Rubys'] property."

In November 2016, Brockman filed a "petition to abate nuisance and for damages," alleging the Rubys or the predecessors in interest constructed and maintained a nuisance that obstructs a natural waterway resulting in devaluation and diminishment of Brockman's land. In September 2017, Brockman moved to amend her petition to add causes of action relating to easements by prescription,

necessity, and implication. The district court granted the motion. Brockman filed her amended petition, which additionally requested the court to establish and enforce an easement by prescription, necessity, or implication. On January 9, 2018, following a bench trial, the district court concluded Brockman failed to prove by a preponderance of the evidence that the complained-of circumstance amounted to a nuisance to Brockman's property. The court dismissed Brockman's petition. The court's ruling did not address the easement issue. On January 14, the Rubys filed a motion to enlarge or amend asking the court to consider their request for awards of attorney and expert-witness fees. On January 24, while said motion was pending, Brockman filed a notice of appeal. On February 1, the court denied the Rubys' request for attorney fees but partially granted their request for expert-witness fees.

## II.    Standard of Review

Our review of this equitable proceeding is de novo. *See* Iowa R. App. P. 6.907; *Braverman v. Eicher*, 238 N.W.2d 331, 334 (Iowa 1976); *Helmkamp v. Clark Ready Mix Co.*, 214 N.W.2d 126, 127–28 (Iowa 1974). We give deference to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P 6.904(3)(g).

## III.    Analysis

### A.    Easement—Preservation of Error

Brockman's amended petition added causes of action relating to easements by prescription, necessity, and implication. In its ruling dismissing the petition, the district court did not address the easement claims. On appeal, Brockman argues the court erred in not finding an easement should be established. Brockman

acknowledges the district court "failed to address easements" but believes error was preserved on the merits of her easement claims "by timely filing a notice of appeal with this court."

The Rubys do not contest error preservation on the easement claims, but we do. *See, e.g.*, *State v. Bergmann*, 633 N.W.2d 328, 332 (Iowa 2001) ("Although the State concedes that error has been preserved . . . , we disagree."); *Top of Iowa Co-op v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) ("In view of the range of interests protected by our error preservation rules, this court will consider on appeal whether error was preserved despite the opposing party's omission in not raising this issue at trial or on appeal."). The filing of a "notice of appeal has nothing to do with error preservation." Thomas A. Mayes & Anuradha Vaitheswaran*, Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (2006). Rather, "[w]hen a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion [pursuant to Iowa Rule of Civil Procedure 1.904(2)] requesting a ruling in order to preserve error for appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

Here, the district court failed to rule on the easement claims and Brockman filed her notice of appeal without filing a motion requesting a ruling on the claims. Error was not preserved. We therefore decline to consider the issue.

B.      Nuisance

A nuisance is a condition that "is injurious to health, indecent, or unreasonably offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere unreasonably with the comfortable enjoyment of life or property." Iowa Code § 657.1(1) (2016). Civil actions "may be brought to enjoin

and abate [a] nuisance and to recover damages sustained on account of the nuisance." *Id.* The burden of proof is on the plaintiff "to establish by a preponderance of evidence the existence of a defendant created nuisance which was a proximate cause of resultant damages to person or property as alleged." *Kriener v. Turkey Valley Cmty. Sch. Dist.*, 212 N.W.2d 526, 532 (Iowa 1973); *accord Build-A-Rama, Inc. v. Peck*, 475 N.W.2d 225, 229 (Iowa Ct. App. 1991).

This was a classic battle of the experts case, with Brockman's expert opining circumstances on the Ruby property caused the presence of a wetland on the Brockman property, and the Rubys' expert opining the wetland is a historical circumstance that was exacerbated by a natural spring, the removal of trees, and ill maintenance of the drainage ditch on the part of Brockman. "When a case evolves into a battle of experts, we, as the reviewing court, readily defer to the district court's judgment as it is in a better position to weigh the credibility of the witnesses." *State v. Jacobs*, 607 N.W.2d 679, 685 (Iowa 2000). Here the district court implicitly found the Rubys' expert's opinion to be more credible in light of all of the evidence presented. Upon our de novo review, we agree. In any event, the evidence presented simply fails to show that a condition on the Ruby property, whether it be the culvert placement or the attached retention pond, was the cause of the wet conditions on the Brockman property. Instead, we find it more likely than not that the wet conditions resulted from the historical existence of a natural spring, topographical makeup of the Brockman property, removal of several trees, and lack of maintenance or improvements as to the drainage ditch.

Upon our de novo review of the record, and affording great deference to the district court's factual findings, we agree with the district court that Brockman failed

to meet her burden to prove a nuisance. We therefore affirm the denial of her petition.

### C. Appellate Attorney Fees

Both parties request an award of appellate attorney fees. "Generally, attorney fees are recoverable only by statute or under a contract." *Miller v. Rohling*, 720 N.W.2d 562, 573 (Iowa 2006). Here, there is no contract between the parties authorizing an award of attorney fees, and "Iowa's statutory nuisance law—Iowa Code chapter 657—makes no provision for the recovery of attorney fees" in the district court or on appeal. *Id.* Neither party contends the other has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *See id.* We therefore deny each party's request.

### D. Expert Witness Fees

The Rubys request that we increase the district court's award of expert-witness fees incurred in the district court proceedings. The Rubys did not file a notice of appeal or cross-appeal of the court's ruling on its request for expert witness fees. We therefore have no jurisdiction over the request and dismiss it. *See In re Marriage of Davis*, 608 N.W.2d 766, 773 (Iowa 2000); *Hulsing v. Iowa Nat'l Mut. Ins. Co.*, 329 N.W.2d 5, 7 (Iowa 1983).

### IV. Conclusion

We affirm the denial of Brockman's petition, deny the parties' requests for appellate attorney fees, and deny the Rubys' request for additional expert-witness fees.

**AFFIRMED.**